Don C. RIGBY, Duane Deakin, George Shuman, Paul Fonnesbeck, Orvil Grover, Howard K. Robinette, Elliot and Wayne Rich, Vyrle Wood, Joseph G. Nicholas, Alma P. Larkin, Robert T. Nish, Norman Grover, C. H. Miller, Leroy Manning, Weldon Miller and W. B. Hendricks, Appellants,

v.

Victor RASMUSSEN, Myron Hansen and Roy Bowles, Review Committee of the United States Agricultural Adjustment Administration, Appellees.

Don C. RIGBY, Charlie E. Peterson, Oleen Garn and Thomas W. Potter, Appellants,

v.

Victor RASMUSSEN, Myron Hansen and Roy Bowles, Review Committee of the United States Agricultural Adjustment Administration, Appellees.

Nos. 6170, 6171.

United States Court of Appeals
Tenth Circuit.

Feb. 15, 1960.

Herschel Saperstein, Salt Lake City, Utah (of Oman & Saperstein), Salt Lake City, Utah, for appellants.

Seymour Farber, Washington, D. C. (George Cochran Doub, Washington, D. C., A. Pratt Kesler, Salt Lake City, Utah, Samuel D. Slade and Marvin S. Shapiro, Washington, D. C., on brief), for appellees.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and WALLACE, District Judge.

MURRAH, Chief Judge.

This is a consolidated appeal from determinations of appellant wheat farmers' respective "base acreages" for the crop year 1958, as fixed by a local committee, and as reviewed and affirmed by both the local review committee and the trial court. See 7 U.S.C.A. §§ 1334(c), 1363, 1365–1367. In accordance with applicable regulation, 7 C.F.R. § 728.816, each appellant's 1958 base acreage had been decreased because he had knowingly overplanted in the next prior wheat year. In the trial court and here on appeal, appellants assail the constitutionality and statutory validity of this regulation.

The challenged regulation was promulgated by the Secretary of Agriculture pursuant to 7 U.S.C.A. § 1375(b) to implement the Congressional scheme for national control of wheat production aimed at insuring wheat farmers a fair economic return for their industry. See 7 U.S.C.A. § 1331. Under this statutory scheme, which appellants have not challenged, the Secretary annually sets a national acreage allotment of wheat to be planted, see 7 U.S.C.A. § 1332, which is then apportioned among the states, counties and individual farms. See 7 U.S. C.A. § 1334. With certain adjustments here immaterial, allocations among the states and counties are based on "acreage seeded for the production of wheat" during the preceding ten years, "plus, in applicable years, the acreage diverted under previous agricultural adjustment and conservation programs." 7 U.S.C.A. § 1334(a) and (b). Allocations among individual farms are made by local committees on the basis of five factors, towit, "past acreage of wheat, tillable acres, crop-rotation practices, type of soil, and topography." 7 U.S.C.A. § 1334(c). The challenged regulation is the administrative formularization of these statutory factors, and is applied to compute "base acreage" for each farm. The county allotments are distributed among farms proportionately according to their respective base acreages, resulting in a certain planting or acreage allotment for each farm each year.

Congress has provided sanctions to encourage farmers not to overplant their allotments as thus determined. In years when production and market conditions indicate a certain level of oversupply, the Secretary, subject to the approval of affected farmers, places in effect "marketing quotas." 7 U.S.C.A. §§ 1335, 1336. In such years, farmers who overplant their allotments must pay a cash penalty for wheat produced on the excessive acreage. 7 U.S.C.A. § 1340(2). However, this penalty may be avoided by properly storing the excess or delivering it to the Secretary. 7 U.S.C.A. § 1340(3). The act plainly contemplates that farmers may without penalty overplant, store the excess, and market it in subsequent years when they either underplant or

sustain a crop failure. 7 U.S.C.A. § 1340 (6). See also recent legislative comment in H.R. No. 1497, U.S.Code Congressional and Administrative News 1958, p. 2308.

 The main thrust of appellants' attack on the regulation is that it does not conform to this statutory scheme and is therefore unconstitutional and invalid. In making such appraisals of regulations it is well to note that the regulation will not be " * * * annulled unless, in the judgment of the court, it is plainly and palpably inconsistent with law," i. e., the parent statute. Boske v. Comingore, 177 U.S. 459, 470, 20 S.Ct. 701, 706, 44 L.Ed. 846. In this context, the Supreme Court's comment on sugar legislation is cogent, though aimed at legislation rather than regulation: "Suffice it to say that since Congress fixed the quotas on a historical basis it is not for this Court to reweigh the relevant factors and, perchance, substitute its notion of expediency and fairness for that of Congress. This is so even though the quotas thus fixed may demonstrably be disadvantageous to certain areas or persons. This Court is not a tribunal for relief from crudities and inequities of complicated experimental economic legislation." Secretary of Agriculture v. Central Roig Refining Co., 338 U.S. 604, 618, 70 S.Ct. 403, 410, 94 L.Ed. 381.

Specifically, appellants charge that the regulation incorporates extrastatutory matter in its formularization of base acreage. Under the regulation, two of the principal ingredients of base acreage are (1) the average of acres planted in certain prior years, and (2) acres diverted in applicable years if the farm's allotment in those years was not knowingly exceeded. The amount of this credit for acreage diverted on a given farm is the difference between the allotment and the base. Thus, if a farmer knowingly overplants his allotment, as in each appellant's case, his acreage history for that year will be decreased to the extent that he underplanted his base acreage. Appellants complain that consideration here of acreage diverted is improper since it is not among the five statutory factors for allocations among farms.

To begin with, we are faced with the certainty that Congress intended acreage previously planted to be one of the determinants of farm allotments.[1] But obviously, if acreage planted was used with no adjustment for acreage diverted, those farmers who reduced their planting to comply with their allotments would be penalized by subsequent reductions in their allotments. Since allotments would be futile if compliance were thus discouraged, the Secretary was faced with the necessity of going outside the five statutory factors in order to establish a workable program, and this he did. Acreage diverted, the factor thus supplied, is as we have seen, one of the statutory factors in state and county allocations. So while the Secretary did go outside the five statutory factors, he remained within the immediate statutory framework.[2] Certainly this much improvisation in order to properly implement Congressional policies is warranted.

 This also answers appellants' contention that the regulation invades the exclusive legislative prerogative to impose penalties. For while it is doubtless true that a regulation may not impose penalties in the absence of statutory authorization, it is also true that a regulation is valid, though it affects some persons adversely, if the adverse effect is necessary to properly implement expressed Congressional purposes. See L. P. Steuart & Bro. v. Bowles, 322 U.S. 398, 64 S.Ct. 1097, 88 L.Ed. 1350. The challenged regulation concededly has the ef-

---

1. "Past acreage of wheat" was inserted into the statute in 1954. The other four factors had been in the statute since its original passage in 1938. See 67 Stat. 151; 52 Stat. 54.

2. Adverse weather conditions was treated the same way. It was not one of the five factors for allocations among farms, but was a statutory consideration for state and county allocations, and was included in the challenged regulation. See 7 C.F.R. § 728.816(c).

fect of penalization by reduction of allotment, which is not statutorily authorized. But as we have said, the regulation reflects the Secretary's best efforts to honor the provisions of the statutes as then written, while achieving a result in accord with the statutory scheme, and that is enough.

But appellants would have us believe that penalization of overplanting is contrary to the true purpose of the statutory scheme, which they say is aimed solely at the control of marketing and not at planting, relying on Rigby v. Mitchell, D.C., 152 F.Supp. 492. We cannot agree with such a characterization of the law. The loss of price support hinges on plantting rather than marketing, 7 U.S.C.A. §§ 1441, 1428(b), and even the "marketing penalty" is geared to acreage overplanted. 7 U.S.C.A. § 1340. The exculpatory provisions for storing the excess and delivery to the Secretary do not detract from our conclusion that penalization of overplanting is consonant with the statutory purposes. See also 7 U.S.C.A. §§ 1331, 1333.

■ But appellants argue that if this much divergence from the five statutory factors is proper, then the Secretary failed to go far enough to provide a reasonable plan. For, as they point out, crediting acres diverted to compliers only, effectively penalizes the farmer who slightly overplants more than the farmer who greatly overplants, since both farmers are credited in any event with all acres actually planted. Certainly this inverse penalty is unreasonable and might well have warranted further improvisation by the Secretary. Perhaps it would have been more reasonable and even more in conformity with the over-

all statutory scheme if the Secretary had credited acres diverted to both compliers and noncompliers to the extent of their compliance, i. e., to the extent that they underplanted their base acreage. But this would have amounted to a greater variance from the statutory provisions, since it effectively negates the significance of acreage actually planted, which is a statutorily required consideration. We do not think the Secretary is required to go that far, especially since we do see some sense in the regulation as written. The diversion credit can reasonably be granted to compliers, for it is inferable that had they not been bound by their allotment, they would have planted all their available acreage. But since the noncompliers apparently gave their allotment no heed anyway, there is no basis for judging how much they might have otherwise planted. And so, although the regulation may not be the most reasonable and equitable which is possible under the statutory circumstances, we do not think it is palpably inconsistent with law.[3] And our function is not to second-guess the Secretary to any greater extent than that. See also Hollstein v. Nebraska State Marketing Quota Review Committee, D.C.Neb.1959, 179 F.Supp. 657; Moe v. Wesen, D.C., 172 F.Supp. 259.

But conceding the validity of the regulation's formula for base acreage, appellants contend that the regulation provides no adequate standard for a local committee's choice between reusing the base acreage set for the next preceding crop year and making a new determination of base acreage as above described, citing Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, and

---

3. Congress has recently placed its stamp of approval on this regulation. In 1957, Congress amended Section 1334 of Title 7 U.S.C.A., to modify the method of determining base acreage. See Public Law 85–203 of August 28, 1957, 71 Stat. 477. But since 1958 wheat planting had already begun, it postponed the operation of the modification until 1959, and explicitly specified that " * * * the past acreage of wheat on any farm for 1958 shall be the base acreage determined for the farm under the regulations issued by the Secretary for determining 1958, wheat acreage allotments * * *." Public Law 85–366 of April 4, 1958, 72 Stat. 78. Thus, in computing base acreage for 1959 and subsequent years, past acreage for 1958 will be the 1958 base as computed under the challenged 1958 regulations. See also H.R. No. 1497; S.R. No. 1359; 85th Cong., 2d Sess.

Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570. Appellants' complaint is that the regulation gives the local committee an unrestrained choice between two base acreages, differing in amount, but each apparently composed of the five statutory factors. The practical purpose of the choice is manifest and valid, i. e., that a farm's base acreage need not be recomputed unless there is reason to believe that because of changed circumstances, the prior computation is no longer accurate. In the language of the regulation, the old base may be used only " * * * if the county committee determines that such use will result in a base acreage for 1958 which meets the requirements prescribed above." The "requirements prescribed above" include a restatement of the five statutory factors and the specification that "each base acreage determined shall be fair and equitable when compared with the base acreages for all other farms in the county." We take this to mean that in order to be reusable, the old base acreage must substantially conform to the regulation's formula for new calculations of base acreage discussed above. 7 C.F.R. § 728.816(b). Otherwise, as between "old base" farms and "new base" farms, there would not be the uniformity of treatment implicit in fairness and equity. Certainly accuracy of the old base as measured by the explicit administrative formula for new determinations of base is a clear and definite standard for the guidance of local committees in deciding whether to use the old base or make a new determination. Plainly, the results in either case must be substantially the same, or a new determination must be made.

 In appeal No. 6171, the trial court held that it had no jurisdiction to hear the cause because appellants there, having failed to apply for administrative review within the statutory time therefor, see 7 U.S.C.A. § 1363, 7 C.F.R. § 728.-823, did not exhaust their administrative remedies. See also 7 U.S.C.A. §§ 1365–1367. Appellants' argument that they may ignore the administrative route be-

cause they raise the constitutionality of the particular administrative framework is without merit. See Corpstein v. United States, 10 Cir., 262 F.2d 200; Miller v. United States, 6 Cir., 242 F.2d 392. The trial court correctly applied the law.

The judgments are affirmed.