Rudolph GEIB et al., Appellants,

v.

Otto JOENS, Appellee.

Rudolph GEIB et al., Appellants,

v.

John C. LEITZ et al., Appellees.

Nos. 16682, 16683.

United States Court of Appeals
Ninth Circuit.

Aug. 12, 1960.

Marvin S. Shapiro, Atty., Dept. of Justice, with whom Asst. Atty. Gen. George C. Doub, and Dale M. Green, U. S. Atty., Spokane, Wash., and Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellants.

Otto Joens, in pro. per.

Gordon & Ripple, Spokane, Wash., Alvin E. Gordon, Spokane, Wash., of counsel, for appellee.

Before STEPHENS, POPE and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

Upon these appeals we are concerned with the wheat acreage allotments assigned for 1959 to appellees' farms in Spokane County, Washington, under the Agricultural Adjustment Act of 1938, as amended. 7 U.S.C.A. § 1281 et seq.

Appellants are members of the Marketing Quota Review Committee for Spokane County. In assigning allotments to appellees' farms, a reduction was made by the County Agricultural Stabilization and Conservation Committee by virtue of appellees' having "knowingly overplanted" in the past. Appellees, aggrieved by this reduction, sought review before appellants as the County Review Committee. Upon affirmance by that committee, review was sought in the District Court, 7 U.S.C.A. § 1365. That court reversed upon the ground that appellees' overplanting was not knowingly done. The committee has taken this appeal. The sole question involved is whether, under the circumstances of this case, the farms must be held to have been knowingly overplanted.

Under the provisions of the Act, allotments for 1959 were made as follows:

(1) Pursuant to 7 U.S.C.A. § 1332, the Secretary of Agriculture programed the national acreage allotment for that year's crop of wheat. 7 C.F.R. 728.903 (1959 Supp.)

(2) Pursuant to 7 U.S.C.A. § 1334(a), the Secretary apportioned this national allotment among the states to secure the several state acreage allotments. 7 C.F.R. 728.904 (1959 Supp.)

(3) Pursuant to 7 U.S.C.A. § 1334(b), the Secretary, as to each state, apportioned the state allotment among the various counties. 7 C.F.R. 728.907 (1959 Supp.)

(4) Pursuant to 7 U.S.C.A. § 1334(c), the county allotment for each county was apportioned among the individual farms by the local County Agricultural Stabilization and Conservation Committee. 7 C.F.R. 728.915, 928.917 (1959 Supp.)

This involved a determination of "base" acreage for the current year, 1959. This was done by averaging out "history" acreages as fixed for prior years. In 1959, the pertinent history involved acreages for the years 1954 through 1957.

A yearly history acreage is fixed at the number of acres actually seeded. To this figure, if the allotment be not exceeded, is added the number of acres diverted from planting. This latter figure, known as "diversion credit," is in any given year the difference between the normal base acreage of the farm and the allotment to the farm for that year. It amounts to a credit allowed to farms complying with the program, i. e., seeding in accordance with their allotments.

To discourage disregard of the allotments so fixed, the regulations provide for a monetary penalty to be levied, with certain exceptions, against those who overplant. In 1959, this amounted to $1.12 a bushel of excess wheat. 7 U.S.C.A. § 1340(2). Loss of diversion credit is a further discouragement. Those who

seed more than their allotment for a given year receive, for their history acreage, only the number of acres actually seeded. The regulations provide:

"If the 1957 farm acreage allotment was knowingly overplanted, the wheat history acreage for 1957 for the farm shall be the wheat acreage for the farm." 23 F.R. 1673, 7 C.F.R. 728.917 (Supp., 1959).[1]

The farmer is thus vitally concerned with his "base" for 1959, from which figure his allotment is determined, and with his "history," from which figure his base is determined. Further, if the 1959 base is erroneous, not only would there be a wrong base for the 1959 allotment, but this erroneous base would have effect in future years.

Both appellees were found by the county committee to have knowingly overplanted in 1957. Their histories for that year were therefore fixed at the number of acres actually planted, with no diversion credit allowed.

Both appellees had in fact knowingly exceeded their quotas, with knowledge that they would be penalized for the excess as the rate of $1.12 a bushel. What they did not know was that in future years their "histories" for 1957 would be affected by their overplanting. They had each sought assurance on this from the County Administrative Office and had each been misinformed by the office manager to the effect that base histories would not be affected by overplanting. For this reason, the District Court upon review held that, as to appellees, the overplanting was not "knowing." In this respect, we feel that the District Court was in error.

In the field of criminal law (should we treat a deprivation of diversion credit as a penalty) to "knowingly" do an act means (save where specific intent is required) no more than a conscious doing of the act. An awareness of the law proscribing it or of the sanctions attending it is not necessary, e. g., Oregon-Washington Railroad & Navigation Co. v. United States, 9 Cir., 1913, 205 F. 337, 339; Model Penal Code, 2.02(9) (Tentative Draft No. 4, 1955).

Although the disallowance of ignorance of the law as a defense is a familiar principle, some exceptions to the rule have been suggested, one of which would excuse the wrongdoer when efforts to ascertain the legality of conduct are met with misinformation justifiably relied upon. See Hall & Seligman, Mistake of Law and Mens Rea, 8 University of Chicago Law Review 641, 675–682 (1941); Model Penal Code, 2.04(3) (b) and comment collecting authorities (Tentative Draft No. 4, 1955).

Here, however, each appellee had knowledge of the fact that overplanting would be penalized. We find no authority for the proposition that partial knowledge of the extent of sanction will spare the misled actor from imposition of the full actual sanction.

Further, we note that the allotments of complying farmers would be affected by relieving the appellees. We note that this is a broad program of economic regulation where a constant changing of base figures on the local level, in order to accommodate such individuals as those here involved, might well require constant adjustment of county and state bases. This case would appear closer to those prohibiting the estoppel of the government on the basis of misinformation given out by local representatives. See Federal Crop Ins. Corp. v. Merrill, 1947, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10; McIndoe v. United States, 9 Cir., 1952, 194 F.2d 602.

Under these circumstances, we feel compelled to reject the contention that appellees' reliance upon misinformation

1. 7 U.S.C.A. § 1334(c), as amended in 1958, 72 Stat. 78, now limits the history acreage of a non-complying farmer to his allotment for the year unless the excess is delivered to the Secretary or stored under regulations, in which case he receives equal treatment with those receiving the "diversion credit," i.e., he gets his base acreage as history acreage. We also note that the requirement of knowing overplanting has been discarded.

should relieve them from the consequences of overplanting.

We conclude that the county committee was correct in its determination that appellees' farms must be held to have lost history by reason of known overplanting.

The judgment of the District Court is reversed. The ruling of the Marketing Quota Review Committee for Spokane County, Washington, is affirmed and reinstated.