Delbert **BISHOP** et al., Appellants,

v.

**REVIEW COMMITTEE, VENUE V, COMMODITY STABILIZATION SERVICE, UNITED STATES DEPARTMENT OF AGRICULTURE, SITTING IN THE CITY OF GRANT, NEBRASKA, IN AND FOR PERKINS COUNTY,** Appellee.

Floyd O. **ALLEN** et al., Appellants,

v.

**REVIEW COMMITTEE, VENUE V, COMMODITY STABILIZATION SERVICE, UNITED STATES DEPARTMENT OF AGRICULTURE, SITTING IN THE CITY OF OGALLALA, NEBRASKA, IN AND FOR KEITH COUNTY,** Appellee.

Nos. 16812, 16813.

United States Court of Appeals
Eighth Circuit.

Jan. 24, 1962.

Lyle B. Gill, Fremont, Neb., made argument for the appellant and was on the brief.

David L. Rose, Atty., Dept. of Justice, Washington, D. C., made argument for the appellee and William H. Orrick, Jr., Asst. Atty. Gen., Theodore L. Richling, U. S. Atty., Omaha, Neb., and John G. Laughlin, Atty., Dept. of Justice, Washington, D. C., were with him on the brief.

Before SANBORN and VAN OOSTERHOUT, Circuit Judges, and GRAVEN, Senior District Judge.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by plaintiffs, wheat farmers operating in Perkins and Keith Counties, Nebraska, from final judgment of the district court affirming the action of appellee County Review Boards in upholding wheat allotments for the year 1960 made to plaintiffs pursuant to the Agricultural Adjustment Act of 1938 as amended, 7 U.S.C.A. § 1281 et seq., hereinafter called the Act, and regulations promulgated thereunder.

This complex Act and the regulations implementing it are very well explained by Judge Blackmun in Review Committee VII, etc., v. Willey, 8 Cir., 275 F.2d 264, cert. denied, 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1522. That case involved 1959 Nebraska wheat allotments. The pertinent provisions of the Act are set out, the purpose of the Act is discussed, and the constitutionality of the Act and the validity of the regulations are upheld with citation of supporting authority. No purpose would be served in going over this extensive field again. We start here, with our holding in Willey, that the Act and the regulations through 1959 are valid. For other recent cases upholding the validity of the Act and regulations, see Rigby v. Rasmussen, 10 Cir., 275 F.2d 861; Geib v. Joens, 9 Cir., 282 F.2d 554; Moe v. Wesen, D.C.Mont., 172 F.Supp. 259; Hollstein v. Nebraska State Marketing Quota Rev. Com., D.C.Neb., 179 F.Supp. 657; Dighton v. Coffman, D.C.Ill., 178 F.Supp. 114, approved, 7 Cir., 279 F.2d 497.

Jurisdiction to entertain this appeal is established.

It is conceded that under the Act the scope of judicial review by the district court of the action of the appellee Boards is limited to questions of law. The Act so provides. 7 U.S.C.A. § 1366. These cases, presenting common questions, were consolidated both in the trial court and here.

The 31 plaintiffs are wheat farmers residing within the jurisdiction of the appellee Boards. Wheat is the principal crop produced in their area. Because of dry weather, summer fallowing is a general practice, most farmers leaving about half of their land fallow each year.

Plaintiffs each knowingly overplanted their allotments in one or more of the crop years, 1955–1957. Some of the plaintiffs upon inquiry were advised by the County Committees that overplanting could affect their allotments in future years. The Committees issued no specific warning as to the possible effect of overplanting, but on the other hand, gave no assurance to any of the plaintiffs that overplanting would not affect future allotments. Under 7 U.S.C.A. § 1334(a), (b), farmers who knowingly overplanted their allotments but planted less than their base acreage lost allotment acres for their state and county, and under the historical acreage allotment method lost acreage for themselves. For an explanation of this situation, including citations to statutes and regulations, see Hollstein, supra, and Moe, supra.

It is sufficient for our purposes to state that it was to plaintiffs' advantage to have their allotments for the year 1960 determined by the carry-over method employed in the counties here involved from the years 1954 to 1958. Under such method, the base established for the previous year would be used as the base for the current allotment and hence no loss of base-wheat acreage would result from non-compliance with the program in prior years.

The Act contemplates that the Secretary of Agriculture annually fix national acreage allotments for wheat, in accordance with certain standards prescribed by the Act. The national wheat acreage is then apportioned by the Secretary to the states, and the state allotment is apportioned to the counties within the state, and the county allotment is apportioned by local farm committees acting on behalf of the Secretary, to the wheat farmers operating in the county. All of this procedure was followed for the crop year 1960. The constitutionality of the Act is not challenged nor is the allotment technique above the county level.

Apportionment of the county wheat allotment to the individual farmers within the county is made by committees of local farmers on the basis of past acreage of wheat, tillable acres, crop-rotation practices, type of soil and topography. 7 U.S.C.A. § 1334(c).

The wheat allotment bases which plaintiffs seek to preserve were originally established in 1954. They were based upon 1952 and 1953 wheat production. Under successive regulations prior to the 1960 regulation, the wheat base for the prior year was adopted as the base for the current year. This resulted in the base established in 1954 being carried forward as the base for each succeeding year up to and including 1958. The pre-1960 regulations under which the County Committees acted provided for the allotments to be apportioned to the individual farmers upon a historical acreage basis, specifying the years to be considered in determining the history. As an alternate plan, the county committee with the approval of the state committee could carry forward the wheat base of the prior year if the county committee determines that such use will result in substantially the same base as would result from the use of the historical acreage method.

■ The regulations for 1960, 7 C.F.R. 728.1017, required the 1960 allotment to be determined on the basis of historical acreage for the years 1955 through 1958. The provisions of the prior regulations for the use of the alternate carry-over method under appropriate conditions was not included in the

1960 regulations. Plaintiffs, in their brief, challenge the validity of the elimination from the regulations of authorization to use the carry-over method on the following grounds:

"I. The standard of conduct the Department of Agriculture will be held to in dealing with farmers will be that policy changes must operate prospectively.

"II. The Department of Agriculture had a definite policy for establishing wheat bases during the 1954–1958 period and it promulgated regulations with a dual aspect.

"III. Congressional intent with respect to the establishment of base wheat acreage is to be found by comparing Public Law 85–203 with Public Law 85–366. Since Congress reenacted the provisions of 7 U.S.C. 1334(c), can the Secretary of Agriculture repeal the balance he struck in determining base wheat acreage and substitute a new balance?"

Plaintiffs more specifically in the course of their brief state:

"Our position is that the Secretary simply changed his policy and made it retroactive, and that is the nub of our complaint."

\*   \*   \*   \*   \*   \*

"We are not urging the court by the use of labels that there is involved here res judicata, equitable estoppel or a vested right in a base. We are arguing that the Secretary has exceeded his authority by destroying adjudicated bases in areas as large as parts of states, where there is no showing of fraud, or mistake of law or fact."

It is plaintiffs' theory that the county committee, by readopting the 1954 base in the succeeding years of 1955, 1956 and 1957, pursuant to the authorization of the use of the carry-over method by the then existing regulations, where the result would be substantially the same as under the historical acreage method, adjudicated that the base so established met the requirments of the Act and this

in effect amounted to an adjudication that the overplanting during such period was immaterial.

The 1960 regulations requiring wheat allotments to be made upon the basis of historical acreage are not vulnerable to the attack the plaintiffs make upon them. The historical acreage method of determining allotments has in all the regulations been the primary basis for determining wheat allotments. As pointed out in Willey, supra, the five factors specified in § 1334(c) must all be considered by the committee in determining allotments. In the Willey case, we specifically upheld the 1959 regulations which contained substantially the same provisions as the 1960 regulations for the determination of base acreage by the historical acreage method, stating:

"After a careful review of the Secretary's regulations directed to the 1959 wheat crop we can conclude only that they embody a reasonable administrative interpretation of the statute, that they are not arbitrary or unreasonable, and that they are valid." 275 F.2d 272.

With reference to the use of past acreage as a factor, we said:

"There must be some basis of allocation of acreage and the historical factor which takes into consideration each producer's past share of the market, while it may be somewhat offensive to new farms and to lands not devoted to wheat during the base period, is not an arbitrary or unreasonable factor to employ. This, in fact, is implicit in the Supreme Court's holding in Secretary of Agriculture v. Central Roig Refining Co., supra, 338 U.S. 604, 612, 614, 618, 70 S.Ct. 403, 94 L.Ed. 381." 275 F.2d 273.

Under the regulations issued prior to 1960, the alternate method of carrying over the base acreage from the prior year was permissible only if it produced a result substantially the same as the historical acreage method. We agree with the interpretation of such provision in

the prior regulations as made in Rigby, supra, as follows:

"In the language of the regulation, the old base may be used only ' * * if the county committee determines that such use will result in a base acreage for 1958 which meets the requirements prescribed above.' The 'requirements prescribed above' include a restatement of the five statutory factors and the specification that 'each base acreage determined shall be fair and equitable when compared with the base acreages for all other farms in the county.' *We take this to mean that in order to be reusable, the old base acreage must substantially conform to the regulation's formula for new calculations of base acreage discussed above.* 7 C.F.R. § 728.816(b). Otherwise, as between 'old base' farms and 'new base' farms, there would not be the uniformity of treatment implicit in fairness and equity. Certainly accuracy of the old base as measured by the explicit administrative formula for new determinations of base is a clear and definite standard for the guidance of local committees in deciding whether to use the old base or make a new determination. Plainly, the results in either case must be substantially the same, or a new determination must be made." 275 F.2d 865. (Emphasis supplied.)

Plaintiffs, by complaining of the use of the historical acreage method in 1960, in effect assert that it produces the result of making their allotments less than they would be under the carry-over method. If such is not the situation, this litigation would be without purpose. Under all the regulations a substantial difference in result would require resort to the historical acreage method.

Thus, the 1960 regulations have actually made no substantial change with respect to making of wheat allotments. Plaintiffs have not shown that they have been deprived of any constitutional or statutory rights by reason of the change made by the 1960 regulations.

■ The fact that the carry-over provision of the former regulations may have been erroneously used in some instances in prior years gives plaintiffs no vested right to the perpetuation of such method. The Secretary is authorized to correct mistakes of law made by him or his subordinates. Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 183, 77 S.Ct. 707, 1 L.Ed.2d 746.

As the Government points out, a reason for the elimination of the carry-over provision may well have been the desire of the Secretary to avoid the misinterpretation of the regulations authorizing its use, in that it had been used in situations where it would not produce substantially the same result as historical acreage.

Courts in interpreting pre-1960 regulations have attached no significance to the fact that the county committees in the year in question have used the historical acreage formula in contrast to their prior use of the carry-over method. Geib v. Jones, supra; Hollstein, supra.

If the county committee can validly shift from the carry-over to the historical acreage method, we can see no reason why the Commissioner cannot rightfully discontinue the use of the carry-over method by regulation. Plaintiffs have acquired no vested right to compel the determination of their allotments by the carry-over method.

There is no merit to plaintiffs' claim that the 1960 regulations operate retroactively. The 1960 regulations by their terms apply to the crop year 1960. They do not purport to and do not govern acreage allotments for any prior year.

■ Regulations of prospective force which provide for determinations based upon past events are not retroactive and are no less valid than other prospective rulings. Helvering v. Wilshire Oil Co., 308 U.S. 90, 97, 60 S.Ct. 18, 84 L.Ed. 101; Helvering v. Reynolds, 313 U.S. 428, 432–433, 61 S.Ct. 971, 85 L.Ed. 1438.

Plaintiffs' third point is likewise without merit. We find nothing in Public Law 85–203 and Public Law 85–366 specifically approving the carry-over allotment method, or indicating any Congressional intention to freeze the carry-over provision of the former regulation as a permanent plan for determining allotments. The legislative history of such enactments discloses no such intention. Public Law 85–203 provides that overplanted acreage was not to be considered as past acreage. By Public Law 85–366, Congress granted some relief from the effect of Public Law 85–203 which was limited to the year 1958. No statutory provision is made with regard to computation of crop histories for prior years. For a more extensive discussion of these statutes and the legislative history see Moe, supra.

Even in situations where statutes are readopted without change, earlier administrative interpretations of the prior statutes are not necessarily adopted. In Helvering v. Reynolds, 313 U.S. 428, 432, 61 S.Ct. 971, 973, the court states:

"That rule is no more than an aid in statutory construction. While it is useful at times in resolving statutory ambiguities, it does not mean that the prior construction has become so embedded in the law that only Congress can effect a change. Morrissey v. Commissioner, 296 U.S. 344, 355 [56 S.Ct. 289, 294, 80 L.Ed. 263]. And see Murphy Oil Co. v. Burnet, 287 U.S. 299 [53 S.Ct. 161, 77 L.Ed. 318]. It gives way before changes in the prior rule or practice through exercise by the administrative agency of its continuing rule-making power. Helvering v. Wilshire Oil Co., 308 U.S. 90, 100, 101 [61 S.Ct. 971, 85 L.Ed. 1438]."

Here the statutory provisions with reference to determining allotments were not readopted without substantial change. A new provision was inserted denying overplanted acreage consideration in determining history. Plaintiffs' principal loss of history did not result from overplanting under the 1957 amendment but resulted from the fact that the plaintiffs as noncompliers with the program were credited with wheat history only for the actual acreage planted and were not credited with diverted acres. Such diversion credit was given only to farmers complying with the program.

Moreover, as heretofore pointed out, it is obvious that the plaintiffs suffered no prejudice as a result of the elimination of the carry-over provision. The record clearly reflects that it would be impossible for the Board under the facts of this case to find that the carry-over method if employed in 1960 would produce substantially the same result as the historical acreage method.

We conclude that the Secretary acted within the statutory framework of the Act in promulgating the 1960 regulations and that such regulations are valid and reasonable, and the plaintiffs have wholly failed to demonstrate that the district court committed any error in affirming the allotments made in this case.

Affirmed.