**Roy L. FOWLER, Dean Burroughs and Celestine Schneider, as members of the Marketing Quota Review Committee of Douglas County, Kansas, Appellant,**

v.

**John B. GAGE, Appellee.**

No. 6778.

United States Court of Appeals Tenth Circuit.

March 23, 1962.

Rehearing Denied May 1, 1962.

John G. Laughlin, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Newell A. George, U. S. Atty., and Marvin S. Shapiro, Attorney, Department of Justice, on brief), for appellant.

John C. Gage, pro se.

Before BRATTON, HUXMAN, and BREITENSTEIN, Circuit Judges.

HUXMAN, Circuit Judge.

John B. Gage, the owner of a farm, made application to the county committee of Douglas County, Kansas, for wheat allotment acreage of the year, 1959. No acreage was granted by the local committee and on petition for review, the review committee affirmed the decision of the county committee. This action was then instituted in the United States District Court for the District of Kansas, where the decision of the review committee was reversed and the case was remanded with directions to fix an acreage allotment. The review committee has appealed.

The proceeding arose under the Agricultural Adjustment Act of 1938, as amended.[1] The Act requires the Secretary of Agriculture, by May 15 of each year, to establish the national acreage allotment for wheat.[2] It then becomes

---

1. 7 U.S.C.A. § 1281 et seq.

2. 7 U.S.C.A. § 1332.

the Secretary's duty to apportion this allotment among the states according to a formula established by the Act.[3] In like manner, the state apportionment is then assigned to the various counties,[4] who, in turn, apportion it among individual farms. Subsection (c) of Section 1334, provides that not more than three per centum of such county allotment shall be apportioned to farms on which wheat has not been planted during any of the three marketing years immediately preceding the marketing year in which the allotment is made.[5]

The Secretary adopted certain regulations to implement the provisions of the Act. Authority for them is claimed under 7 U.S.C.A. § 1375(b). Regulation 728.919 lays down the qualifications for new farm allotments as follows: (1) The application must be filed on or before the closing date. (2) The committee determines that the land for which the allotment is requested will ordinarily produce a good crop of wheat without appreciable erosion. (3) The producer establishes to the satisfaction of the county committee that:

"(i) The system of farming has changed or is changing to the extent that wheat rather than other small grains will be included in such system for 1959, the operator will not operate any other farm for which a 1959 wheat acreage allotment will be determined, and the operator expects to derive 50 percent or more of his livelihood from farming operations on the farm covered by the application; or

"(ii) The established rotation system followed on the farm will include wheat for 1959."

Under regulation 728.919(b)(3) a new farm is eligible for an allotment only if the conditions of either subparagraphs (i) or (ii) are satisfied.

The basis of the application was that the land was best suited for wheat and that a reasonable amount of wheat fits in with other farming operations. Gage admitted that he did not expect to derive fifty percent of his livelihood from the farm. The county committee found him ineligible for a new farm allotment for that reason. Upon appeal, the appeal committee concluded that the determination of the county committee denying Gage a new farm wheat acreage allotment was correct. Detailed findings of fact were made. The review committee found there had been no wheat seeded on Gage's farm for the crop years 1952, to and including the years 1956 and 1957, and that no wheat allotment had been established for the farm for 1958; that the system of farming had not been changed and was not changing insofar as the main objective, livestock production, was concerned; that there was no established rotation system followed on the farm which calls for wheat in 1959, and that less than fifty percent of applicant's income would come from the farm. Based on these findings, the committee concluded that the farm was not an old farm as defined in the regulations; that the existence of a rotation system calling for wheat in 1959 was not established; that Gage admitted that he would not receive fifty percent of his livelihood from the farm; and that the farm could not qualify as a new farm for wheat allotment. Based on these conclusions, it affirmed the decision of the county committee. Gage then instituted this action in the District Court. The trial court found there was evidence to sustain the review committee's findings of fact, but reversed its decision on the ground that the regulation requiring that fifty percent of the applicant's livelihood be earned from the farm to qualify as a new farm was void for want of authority under the Act for the Secretary to make such a regulation. This appeal challenges the correctness of that conclusion.

The review by the review committee is a de novo proceeding. The trial court

---

3. 7 U.S.C.A. § 1334(a).

4. 7 U.S.C.A. § 1334(c).

5. By regulations not in question, the Secretary has designated such acreage as new farms.

correctly concluded that the matters and issues presented upon the filing of an application for review are those issues raised in the application and the answer filed by the local committee. The answer by the local committee stated: "1. The County Committee denies that established rotation system followed on the farm includes wheat for 1959. 2. The County Committee has determined that this farm is ineligible because the owner and operator does not expect to derive 50% or more of his livelihood (sic) from farming operations on the farm covered by the application for new farm allotment." The court correctly found that the issues before the review committee, as framed by the application and response, were whether applicant expected to derive more than 50% of his income from the farm and whether there was an established rotation system in effect on the farm which included wheat for the year, 1959. These were issues of fact. The review committee answered both questions in the negative and the trial court upheld its findings because both were supported by evidence.

It is not claimed that this farm can qualify under the old farm provision of the law. It must qualify, if at all, as a new farm. The sole question before both the local committee and the review committee was whether the farm was entitled to an allotment as a new farm. The local committee said "no," and based its decision on the 50% income provision. The review committee also said "no," but based its decision on the ground that the applicant did not earn at least 50% of his income from the farm and on the further ground that the farm rotation system did not include wheat for the year, 1958.

As pointed out, the trial court held there were two issues before the review committee: First, would Gage earn at least 50% of his income from this farm, and second, will the established rotation system followed on the farm produce wheat for 1959. The committee found

under the evidence that both these questions must be answered in the negative. If these regulations are valid, Gage was not entitled to an allotment because he did not comply with either of them. It was necessary for him to bring himself within at least one of these regulations.

■■■ The court, in a well reasoned opinion, in effect held that Gage was not required to comply with the 50% income regulation because in its view that regulation was void. Assuming, without deciding, that the court was correct in its conclusion, it leaves undisposed of the second issue before the review committee, namely, did the established rotation system followed on the farm include wheat for 1959? Unless Subsection (ii) is likewise void, Gage must comply with it before he is entitled to an acreage allotment. Whatever may be said with regard to the validity of Subsection (i), in our opinion, Subsection (ii) is a valid exercise of the regulatory power possessed by the Secretary. 7 U.S.C.A. § 1334(c) establishes the standards upon which allotments to individual farms are to be made. So far as applicable, they apply alike to old farms and so-called new farms. Among these standards is "crop rotation practices." This provision does not define itself. To make it effective, it must be implemented by a proper regulation. That was the purpose of the regulation set out in Subsection (ii). It was promulgated to implement the congressional scheme for national control of wheat production. Such a regulation will not be annulled by a court unless plainly and clearly inconsistent with the law.[6] Furthermore, we think the regulation is well within the spirit and general purpose of the law. Neither is its validity, even if Subsection (i) should be declared void, affected thereby. The law is well settled that when a part of a statute is declared void, the entire statute falls unless the invalid portion can be separated from the remaining part of the statute. That applies with equal force to a regulation which has the force

6. Rigby v. Rasmussen, 10th Cir., 275 F.2d 861.

of law. There is no connection between Subsections (i) and (ii). Compliance is required only with either (i) or (ii). Subsection (ii) is valid even if Subsection (i) should be declared void. Since Gage did not comply with Subsection (ii), he was not entitled to an allotment for the year in question even if Subsection (i) is void.

■ We think the committee of review predicated its judgment upon both grounds, namely, that Gage did not earn at least 50% of his income from this farm and that he did not comply with regulation Subsection (ii). It made findings of fact against Gage on both grounds. But even if it should be held that it assigned as reason for its judgment only the fact that he did not comply with the 50% income provision, its judgment must nonetheless be upheld because it is a well established principle that a judgment which is right under the facts, as found, will not be reversed even if an erroneous ground be assigned therefor.

Reversed.

BREITENSTEIN, Circuit Judge (dissenting).

The majority opinion disturbs me because I believe that it creates uncertainty and confusion in the administration of the Agricultural Adjustment Act so far as the determination of eligibility for new-farm wheat allotments is concerned.

Appellee Gage satisfied all pertinent regulatory requirements except that he admittedly received more than 50% of his income from a non-farm source and he did not have an established rotation system which included wheat. The trial court held that the findings of the Review Committee, adverse to Gage on these two points, were sustained by the evidence and conclusive on the court. The court further held that the source-of-income provision was invalid and remanded the case for determination of the acreage to which Gage was entitled.

The majority reverses by holding that even though the source-of-income provision is void Gage is entitled to no allotment because he did not have a wheat-including established rotation system. This holding is made in the face of the fact that the controlling regulation makes wheat-allotment eligibility rest on the satisfaction of either one of two alternatives. The majority says that it is not necessary to determine the validity of the first alternative because if it is void, eligibility then depends on the second alternative which Gage has not satisfied. By avoiding decision on the validity of the first, the court avoids decision on whether the second can stand alone.

The pertinent regulations are Subsections (i) and (ii) of 7 C.F.R. § 728.919 (b) (3). To satisfy (i) the applicant must establish that the system of farming has changed, that the farm operator will operate no other farm for which there is a wheat acreage allotment, and that the operator of the farm will derive 50% or more of his livelihood from the farm. These requirements are stated in the conjunctive and if all three are satisfied, the applicant is eligible for a wheat allotment. Subsections (i) and (ii) are joined by the word "or." Subsection (ii) says that an applicant is eligible if the established rotation on the farm includes wheat for the year in question. If this is shown, the applicant is eligible regardless of his ability to satisfy (i).

The effect of the majority opinion is to read the "or" as "and" when applying the subsections to an applicant who cannot satisfy the source-of-income requirement. In my opinion an applicant who cannot satisfy (ii) is entitled to have determined his rights under (i) and it is no answer to say that the validity of (i) is immaterial because in any event he cannot satisfy (ii). I am mystified as to how the local committees will administer these regulations in the face of the majority decision. If the "or" is read as "and," the source-of-income provision applies to both subsections and must be satisfied even though there is a qualifying rotation practice. If (i) is invalid, a determination must be made as to the effect of that invalidity on the remaining

regulations covering new-farm allotments. The problem must be solved and it is squarely and fairly presented in this case.

Regulations by the Secretary applicable to eligibility for new-farm allotments must be reasonably consistent with the purposes and objectives of the Agricultural Adjustment Act. The addition of standards or tests not justified by the Act is the performance of a non-delegable legislative function.[1] In Rigby v. Rasmussen, 10 Cir., 275 F.2d 861, a case involving wheat regulations, this court held that such regulations will not be annulled unless "plainly and palpably inconsistent with law."

No provision of the Act makes source of income a test of eligibility for new-farm wheat allotments. The Review Committee contends that the regulation is consistent with the economic objectives of the Act because the determination of eligibility for a new-farm allotment on the basis of source of income protects the objects of congressional concern, those dependent on farming for a livelihood. This congressional objective has to be implied from the provisions of 7 U.S.C.A. § 1282 and § 1331 relating to parity and to distress caused by crop surpluses. The source of income of a farm operator has nothing to do with parity and nothing to do with the creation or cure of a surplus. If the economic objectives of the Act sustain the source-of-income principle, that principle should apply to both old and new farms and should also apply to the rotation-system requirement of Subsection (ii).

The effect of the regulation is to benefit the big producer and to hurt the small farmer. Throughout the farming areas industrious and thrifty men run farms and also work in nearby towns. The application of the source-of-income test to those individuals may well disqualify them from raising wheat to supplement their incomes and to aid in the provision of a livelihood for their families.

The regulation makes the source-of-income test applicable to the operator of the farm, not to the owner. The door is wide open for the bonanza wheat farmer producing from an immense acreage to qualify by providing a paid operator for each farm. As long as the employee derives more than 50% of his income from work on that farm, the producer is eligible for a new-farm allotment.

The relationship between source of income of an individual and the right of that individual to use his property for a lawful endeavor is difficult to comprehend. If source of income is a permissible test, the owner of urban property can be denied the right to operate a parking lot unless he gets a certain percentage of his income from such activity. If the source-of-income standard is applicable to the use of property, it may be applied to other rights and privileges, such as teaching school and practicing law, to preclude therefrom those receiving a certain percentage of their income from outside sources. Without saying whether legislative action establishing such a test may be valid or not, the principle involved is political in nature and must be determined by carefully considered legislative action—not by administrative fiat.

The Review Committee says that the regulation is justified because restrictions on eligibility are needed to prevent undesirable dilution of the total acreage by an increase in the number of allottees and to prevent unreasonably small allotments. The desirability of such objectives does not sustain the imposition of standards having no basis in the Act.[2]

The argument of the Review Committee that the regulation must be upheld because it is an administrative interpretation of long standing is not persuasive. The regulation in question was not con-

1. A. L. A. Schecter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570; Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446.

2. Panama Refining Co. v. Ryan, supra, 293 U.S. pp. 418, 419, 55 S.Ct. pp. 247, 248, 79 L.Ed. 446; United States v. Abrams, 6 Cir., 197 F.2d 803, 805, certiorari denied 344 U.S. 855, 73 S.Ct. 93, 97 L.Ed. 664.

temporaneous construction by those responsible for putting the statutory plan into operation.[3] The Act was passed in 1938 and the first reference to income or livelihood as a factor for consideration in new-farm allotments was in the regulations applicable to the 1951 crop. While similar factors were earlier applied to tobacco, cotton, rice, and peanut allotments, there are differences in the statutory provisions relating to those commodities.[4] Administrative determinations must have a basis in law and must be within the granted authority.[5] A regulation may not add to a statute something which is not in the statute,[6] and, if it does, no amount of administrative interpretation will make it valid.

In my opinion the source-of-income provision is plainly and palpably inconsistent with the law and cannot stand. This determination does not solve the problem because it leaves undecided the effect of such partial invalidity of the regulations concerning new-farm allotments.

The trial court eliminated the source-of-income provision from Subsection (i) and gave effect to the two remaining conditions of that subsection, which the applicant satisfied, with the result that the applicant was eligible for an allotment. This assumes that the Secretary would have issued the regulation without the source-of-income provision. The majority leaves undecided the validity of the source-of-income provision and holds that, regardless of its validity, the failure of the applicant to satisfy (ii) deprives him of eligibility. This assumes either that the Secretary would have issued the regulation without Subsection (i) or that the Secretary did not express his true in-

tent when he connected (i) and (ii) with the disjunctive "or" but intended to use the conjunctive "and."

The correct solution is indicated by Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 618–619, 64 S.Ct. 1215, 88 L.Ed. 1488. The Court of Appeals held void part of a definition appearing in a regulation of the Administrator of the Wages and Hours Division and applied the remaining valid provisions to determine the rights of the parties. The Supreme Court agreed on the invalidity of the questioned provision but held that the Court of Appeals erred in giving effect to the remaining provisions. The Supreme Court said, at page 619, 64 S.Ct. at page 1222:

"It would be the sheerest guesswork to believe that elimination of an important factor in the Administrator's equation would have left his equation unaffected even if he did not here insist upon its importance. It is not for us to write a definition. That is the Administrator's duty."

The Court held that the case should be remanded to the district court with instructions to hold it until the Administrator made a valid determination within the authority given him by Congress.

Similarly here it would be the sheerest guesswork to believe that the Secretary would have promulgated Subsection (i) without the source-of-income provision, or that he would have promulgated Subsection (ii) without its alternate, Subsection (i), or that he did not express his true intent in using the disjunctive "or."

The disposition "most consonant with justice to all interests in retracing the erroneous course that has been taken"[7] is to remand this case to the County Com-

3. Cf. United States v. American Trucking Associations, Inc., 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345.

4. For example, 7 U.S.C.A. § 1344(e) covering apportionment of new cotton acreage refers to adjustment for various conditions including "small or new farms."

5. Brannan v. Stark, 342 U.S. 451, 72 S.Ct. 433, 96 L.Ed. 497; Social Security Board

v. Nierotko, 327 U.S. 358, 369, 66 S.Ct. 637, 90 A.L.R. 718.

6. United States v. Calamaro, 354 U.S. 351, 359, 77 S.Ct. 1138, 1 L.Ed.2d 1394. Nothing within this statute makes it a proper subject for interpretive or definitive regulation as in Birmingham v. Geer, 8 Cir., 185 F.2d 82, certiorari denied 340 U.S. 951, 71 S.Ct. 571, 95 L.Ed. 686.

7. 322 U.S. 619, 64 S.Ct. 1222.

mittee with directions to hold it until the Secretary, with all deliberate speed, makes regulations for new-farm eligibility that are within the authority given him by Congress.