332 F.2d 100
 Clarence J. MALONE, Executor of the Estate of James Malone, Deceased, and Joseph A. Mentlick, Appellants,
v.
Hurlbut GRAVES, Stanley Rogers, and Edward Danills, Members of the Rawlins County ASC Review Committee, Appellees.
 No. 7446.
 United States Court of Appeals Tenth Circuit.
 May 22, 1964.
 
 Robert E. Tilton, of Tilton & Burkhead, Topeka, Kan., for appellants.
 John C. Eldridge, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., Newell A. George, U. S. Atty., and Alan S. Rosenthal, Atty., Dept. of Justice, with him on the brief), for appellees.
 Before BREITENSTEIN, HILL and SETH, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This appeal concerns the wheat acreage allotment to appellants' farm for the 1961 crop year under the Agricultural Adjustment Act of 1938, as amended.[1] The trial court affirmed the decision of the local Review Committee and this appeal followed.
 
 
 2
 The Act provides for the establishment of a national acreage allotment for wheat, the apportionment of that allotment among the states, the division of a state share among the various counties, and the apportionment of a county share to individual farms.[2] Before the 1958 amendments to the Act the allocation to individual farms was on the basis of several factors including "past acreage of wheat" and the determination of this acreage was covered by regulations of the Secretary of Agriculture. The 1958 amendments defined "past acreage of wheat" with precision.[3] In substance Congress said that the term means the wheat acreage on the farm, not in excess of the farm's allotment, plus acreage diverted under the wheat programs with the proviso that if excess production is not stored under applicable regulations or if stored, is later depleted, "the past acreage of wheat for the farm for the year in which the excess was produced shall be reduced to the farm wheat acreage allotment for such year."
 
 
 3
 The dispute in this case is over the past acreage of wheat in the 1959 crop year for farm G-79 owned by James Malone.[4]
 
 
 4
 In 1958 the farm was leased to one Reinert on a share-crop basis. The lease had a provision whereby the tenant agreed to comply with the Act and the regulations thereunder. Although the wheat allotment for the 1959 crop year was 186 acres, Reinert planted 322 acres of wheat. After Malone discovered the overplanting, he terminated Reinert's tenancy and leased the farm to appellant Mentlick. Reinert, however, had the right under the lease to harvest the crop which he had planted. At Malone's suggestion Mentlick asked Reinert to destroy the excess wheat or for permission to destroy the wheat at his and Malone's expense. The local office of the Agricultural Stabilization and Conservation Service explained to Reinert the consequences of the overplanting. In the summer of 1959, Reinert harvested the excess, sold 702 bushels of his share of the excess, and paid the penalty imposed thereon.[5]
 
 
 5
 In establishing the 1961 wheat acreage allotment for the farm the County Agricultural Stabilization and Conservation (ASC) Committee used, in the formula prescribed by the Secretary, as the past acreage of wheat, the 1959 wheat acreage allotment for the farm without the addition thereto of the diverted acres. The reason for this action was the sale of excess wheat by Reinert. The effect of this determination was to reduce the farm's allotted wheat acreage from 179.5 acres, the amount it would have been but for the sale of excess wheat by Reinert, to 166.8 acres, a loss of 12.7 acres.
 
 
 6
 Malone and Mentlick sought to have the allotment reviewed by the appellees, members of the County Review Committee. In so doing they did not challenge the basic formula but asserted that the reduction was improper because it punished them for the misdeeds of Reinert. After a hearing the Review Committee made findings of fact and said:
 
 
 7
 "We conclude that neither of the appellants, James Malone or Joseph Mentlick planted, produced, harvested or marketed excess wheat from this farm, but that Francis Reinert alone was responsible for the production and marketing of the excess wheat on farm G-79. But, we also conclude that the County Committee has properly applied the laws and regulations set forth by the Department of Agriculture. Therefor, the County Committee correctly established a final base acreage of 249 acres and an allotment of 166.8 acres for this farm for the 1961 crop year."
 
 
 8
 Malone and Mentlick then brought the instant action for judicial review.[6] The trial court held that the determination of the Review Committee was in accord with the applicable law.
 
 
 9
 The farm owner and his tenant, appellants here, make no effort to show that, under the statutes and regulations, the ASC and Review Committees made an erroneous allotment to the farm. Instead, they argue what they consider to be the equities of the case.
 
 
 10
 They first rely on a 1960 regulation relating to the transfer of stored excess wheat.[7] If the regulation is to be given retroactive effect, the owner and tenant are not helped because in the case at bar there could be no transfer of storage of the 702 bushels of excess wheat sold by Reinert.
 
 
 11
 The main thrust of the argument is that the action of the Review Committee is grossly inequitable and unjust because the owner and present tenant are made to suffer because of misdeeds of a former tenant which they did everything possible to prevent. Their claim that the trial court failed to apply equity is based on the judicial review section of the Act which provides that court review is obtained by filing a "bill in equity" against the Review Committee.[8] The label so given the form of judicial proceeding does not empower the court to disregard the statutes and regulations.
 
 
 12
 The constitutionality of the Act is attacked on the grounds that it violates due process and makes an impermissible delegation of power to the Secretary. We agree with the Eighth Circuit that "an attack upon the constitutionality of the Act no longer presents a substantial question."[9] The Act does not violate the due process clause because in a particular case it produces an inequitable result.[10] The contention that in the administration of the Act the Department of Agriculture acts in legislative, executive, and judicial capacities in violation of the constitutional principle of separation of powers merits little comment. We are convinced that the statutory procedures recognize the principle and that the appellants received a full and fair hearing.
 
 
 13
 The trial court observed that this case presents "a classic situation in which we find one citizen punished for the misdeeds of another." The result, however, is in accord with the applicable law and the court must follow the law.[11] Under the Act the allotment is made to the farm — not to an individual. The allotment for farm G-79 was exceeded. The statute provides what shall be done in such a situation. It must be remembered that an allotment is made to each state, each county, and each farm within a county. If farm G-79 is given a greater allotment, by disregarding the fact it was not in compliance in 1959, the allotments to the other farms in the county would have to be adjusted.[12] The balancing of equities in "complicated experimental economic legislation" is for Congress rather than the courts.[13] We agree with the trial court that the action taken by the Review Committee was plainly required by the Act.
 
 
 14
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 7 U.S.C. § 1281 et seq
 
 
 [2]
 7 U.S.C. §§ 1333, 1334(a), 1334(b), and 1334(c). See also Fowler v. Gage, 10 Cir., 301 F.2d 775, 776-777
 
 
 [3]
 7 U.S.C. § 1334(c) (1) (iii), enacted in 1958 reads: "* * * (iii) the past acreage of wheat for 1959 and any subsequent year shall be the wheat acreage on the farm which is not in excess of the farm wheat acreage allotment, plus, in the case of any farm which is in compliance with its farm wheat acreage allotment, the acreage diverted under such wheat allotment programs:Provided, That for 1959 and subsequent years in the case of any farm on which the entire amount of the farm marketing excess is delivered to the Secretary or stored in accordance with applicable regulations to avoid or postpone payment of the penalty, the past acreage of wheat for the year in which such farm marketing excess is so delivered or stored shall be the farm base acreage of wheat determined for the farm under the regulations issued by the Secretary for determining farm wheat acreage allotments for such year, but if any part of the amount of wheat so stored is later depleted and penalty becomes due by reason of such depletion, for the purpose of establishing farm wheat acreage allotments subsequent to such depletion the past acreage of wheat for the farm for the year in which the excess was produced shall be reduced to the farm wheat acreage allotment for such year."
 
 
 [4]
 James Malone is now deceased and this appeal is prosecuted in his behalf by the executor of his estate
 
 
 [5]
 See 7 U.S.C. § 1340(2)
 
 
 [6]
 See 7 U.S.C. §§ 1365 and 1366
 
 
 [7]
 Sec. 728.879(j), 25 Fed.Reg. 2882
 
 
 [8]
 7 U.S.C. § 1365
 
 
 [9]
 Weir v. United States, 8 Cir., 310 F.2d 149, 152. See also Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 and Corpstein v. United States, 10 Cir., 262 F.2d 200, certiorari denied 359 U.S. 966, 79 S.Ct. 877, 3 L.Ed.2d 834
 
 
 [10]
 Wickard v. Filburn, 317 U.S. 111, 129-130, 63 S.Ct. 82, 87 L.Ed. 122; Secretary of Agriculture v. Central Roig Refining Co., 338 U.S. 604, 618, 70 S.Ct. 403, 94 L.Ed. 381; Rigby v. Rasmussen, 10 Cir., 275 F.2d 861, 863
 
 
 [11]
 See Hedges v. Dixon County, 150 U.S. 182, 192, 14 S.Ct. 71, 37 L.Ed. 1044; Burchfield v. Bevans, 10 Cir., 242 F.2d 239, 241
 
 
 [12]
 See Geib v. Joens, 9 Cir., 282 F.2d 554, 556
 
 
 [13]
 See Secretary of Agriculture v. Central Roig Refining Co., 338 U.S. 604, 618, 70 S.Ct. 403; Wickard v. Filburn, 317 U.S. 111, 129, 63 S.Ct. 82