**ROBERTSON v. ADAIR.**
**No. 811.**

Circuit Court, Citrus County.

October 30, 1957.

A. T. Cooper, Jr., Clearwater, for plaintiff.

George W. Scofield, Scofield & Bradshaw, Inverness, for defendant.

CARROLL W. FUSSELL, Circuit Judge.

This cause came on for final hearing before me on testimony taken before the court and briefs submitted by the attorneys for the respective parties.

The complaint seeks — (a) to reform the description in a real estate mortgage, and (b) to accelerate and foreclose the mortgage on account of (1) default in making payment, (2) default in the payment of taxes, (3) default in procuring insurance, and (4) commission of waste.

The answer does not contest reformation of the mortgage; denies default in the payment of taxes and in the procuring of insurance; denies the commission of waste; admits default in the payment on the note, but seeks to excuse and defend on the ground that the default was the result of inequitable conduct on the part of the plaintiff. Tender is made in court of the defaulted payment, and all subsequent payments prior to the time they became due.

The note is dated March 31, 1956, is in the principal amount of $12,000, bears interest at 3% per annum, is payable at the rate of $30 per month or more and in any event within five years from date. There is no acceleration clause in the note, but such clause is in the mortgage in the usual form, with the provision that — "if such default is continued [no] days it shall be optional with the party of the first part, his heirs and assigns, to consider the whole sum or sums of money secured by this mortgage as immediately due and payable". The mortgage also contains a covenant on the part of the mortgagor not to "commit or suffer any waste of said premises, to pay all taxes and assessments that may be imposed on said premises * * * * and to procure and keep insurance on the buildings thereon during the time of said indebtedness, in such company as said second party may approve in the sum of not less than $_____, payable in case of loss to the said party of the second part, and to deposit said policies with the said party of the second part".

No testimony was offered by the plaintiff establishing waste, nor as to default in the payment of taxes or procuring of insurance.

Defendant testified denying waste, offered in evidence a receipt for taxes dated in March 1957 and an insurance policy containing loss payable clause which became effective in July 1957.

The court, therefore, finds that there was no evidence establishing a breach of covenant against the commission of waste; taxes did not become delinquent or subject to interest or other charges until April 1, and the evidence shows they were paid prior to that

date, so there was no default on the covenant to pay taxes. It is true that the insurance policy offered in evidence by the defendant did not become effective until July, but the insurance clause was not completed so as to show the amount of insurance required or agreed upon, nor was any evidence offered as to any amount of insurance agreed upon between the parties. There was no evidence that the plaintiff requested or discussed the obtaining of insurance or the amount thereof with the defendant at any time, or that the plaintiff suffered any damage by reason of the delay of the defendant, and the court finds that no breach of covenant occurred sufficient to warrant the exercise of the option to accelerate the mortgage by the plaintiff on account of the delay of the defendant in obtaining such insurance.

The sole remaining question is whether or not the plaintiff has been guilty of such inequitable conduct as to preclude him from exercising his option to accelerate the mortgage because of the default in the payment on the note.

Plaintiff's brief is concerned principally with the legal proposition that a contemperaneous oral agreement is not admissible to vary or alter the terms of a written instrument which is unambiguous on its face. This court concedes the above to be good law, but it is not applicable in the instant case.

The question in this case is whether or not the plaintiff has been guilty of such inequitable conduct that he is precluded from enforcing the acceleration clause because of a default in payment which was immediately tendered upon notice to the defendant.

The facts show that the parties were close friends and neighbors at the time of the execution of the mortgage and remained such at least until the filing of the foreclosure suit. The mortgagee had the mortgage prepared by his attorney and took it to the mortgagor for execution. The mortgagor having complete confidence in the mortgagee, signed the mortgage without reading it and the mortgage was then taken back by the mortgagee to his attorney who had it notarized and witnessed, although the mortgagor was not present.

The mortgagee testified that a mistake was made in the description of the mortgage and the mortgagor says that he has no knowledge of this, but is willing for the description to be changed as suggested by the mortgagee.

Both parties testified that from the date of the mortgage in March 1956 to about the first of 1957, part of the monthly payment was made in groceries and the balance in cash. This continued for

some months, even after the mortgagee moved to another county, during which time the mortgagee purchased groceries from the mortgagor at convenient times when he was in that territory. A number of payments became delinquent during this period of time, but were paid by the mortgagor when the mortgagee came in or requested payment.

The default upon which the exercise of the acceleration clause is predicated is for the months of January and February 1957 in the amount of $60. The evidence shows that the attorney for the mortgagee mailed a letter to the mortgagor with reference to these payments, which was dated and mailed March 4, 1957, on Monday of that week, but the contents of this letter are not known as it was not introduced in evidence. The mortgagor testified that he lived a considerable distance from the post office and usually got his mail only once a week during the latter part of the week, which fact was apparently known by the mortgagee who offered no evidence to rebut these facts.

The suit for foreclosure was filed on March 7, 1957, and service thereof was made on the defendant on March 8, 1957. On March 8, 1957, defendant mailed to the mortgagee a money order for $60 covering the payments for January and February 1957, which letter was received by the plaintiff on March 11, 1957. The money orders were not cashed, however, by the plaintiff, who later returned them to the mortgagor and they were filed in the registry of the court together with money orders in the amount of $30 for each month subsequent to that date — the money is now in the registry of the court subject to withdrawal by the mortgagee as payments on his mortgage.

There is no evidence as to the value of the mortgaged property, although the defendant attempted to offer testimony showing that the value of the property had increased and was greatly in excess of all outstanding mortgages against it. Questions relative to this line of testimony were objected to by the plaintiff, which objections the court sustained.

It is the opinion of the court that there is no relation more open or vulnerable for the success of inequitable conduct than the relation between friends, which is ofttimes much stronger than blood relationship. There was nothing in the conduct of the mortgagee which would indicate to the mortgagor that the letter of the law would be strictly adhered to and the acceleration clause enforced without notice upon any default in payment. There is no evidence that any payment was ever requested by the mortgagee which was not immediately paid, nor is there any evidence that the mortgagee

indicated to the mortgagor in any degree that he would exercise his option to accelerate the entire indebtedness upon any default. The first notice of this exercise of option delivered to or received by the mortgagor was when the sheriff served him with notice of the foreclosure suit on March 8, 1957.

The law pertinent to this type of defense is set forth in 5 A.L.R. 2d 984, par. 8 — *"Equitable relief from exercise of option.* It is generally accepted that a court of equity has the power to relieve the maker from the effect of an operative acceleration clause in a bill or note where the default of the maker was the result of some unconscionable or inequitable conduct of the holder."* See also 36 Am. Jur. 882, 887 and 888, Mortgages, pars. 387, 399 and 401.

Naturally, any case in which a defense of this character is offered must be decided on the basis of the facts of the particular case, and it is doubtful that any case will have identical facts with another. A number of cases are cited under the above where courts of equity have refused to enforce an acceleration clause or have enjoined the enforcement of an acceleration clause under facts similar to the facts in the instant case. Also, the law compiled in these cases indicates the power of a court of equity in a situation of this kind.

In Murphy v. Fox, 278 Pac. 2d 820, the Supreme Court of Oklahoma quotes Chief Justice Cardozo with approval, at page 825 —

" 'There is no undeviating principle that equity shall enforce the covenants of a mortgage, unmoved by an appeal ad misericordiam, however urgent or affecting. The development of the jurisdiction of the chancery is lined with historic monuments that point another course. * * * One could give many illustrations of the traditional and unchallenged exercise of a like dispensing power. It runs through the whole rubric of accident and mistake. Equity follows the law, but not slavishly nor always. Hedges v. Dixon County, 150 U.S. 182, 192, 14 S. Ct. 71, 37 L. Ed. 1044. If it did, there could never be occasion for the enforcement of equitable doctrine. 13 Halsbury, Laws of England, p. 68.' "

In Bischoff v. Rearick, 232 S.W. 2d, 174, the Court of Civil Appeals of Texas said—

"The same case [Brown v. Hewett, 143 S.W. 2d 223] is authority for the proposition that equity will relieve against a provision for the acceleration of a debt when it is produced by the inequitable conduct of the creditor himself. The case there cited, it will be noted, also holds it will be relieved against when the default is the result of accident or mistake. It is true the cited case was dismissed by agreement while pending in the

Supreme Court on an application granted, but the holding quoted in the Brown-Hewett case has the approval of the Supreme court. Of course, courts fail in their duty when they neglect to exercise their equity powers to prevent a manifest injustice, such as would be worked in this case if plaintiffs were permitted to prevail under the record in the case."

In Parker et al v. Masur, 13 S.W. 2d, 174, the Court of Civil Appeals of Texas said—

"The power to declare one or all of notes due in case of default of payment of interest is left optional with the owner or holder of the note. No notice of acceleration of payment of the whole was given by the owner to maker, and, unless the waiver of presentment for payment waived all notice of declaration of acceleration of payment, the injunction was properly granted. The exercise of such power is a harsh one in any case, and especially so under the facts in this case, where the lots were bought on ten years' time, and only six months had expired, and where the maker swore that he had the money to pay the interest but was not notified as to it being due. The notes were all placed in the hands of an attorney for collection in a very short time after the interest was due, as shown by the fact that appellee received notice from the attorney on the fourth day after the interest was due. The owner of the notes would not accept payment of the interest, but inexorably demands his "pound of flesh", although no injury to him could possibly have arisen from two or three days' delay in paying the interest. A court of equity will scan very closely the enforcement of so hard and rigorous a contract as appears in this case. A contract must be read in the light of the intention of the parties to it, and we do not conceive that it ever entered into the mind of appellee that without notice the whole contract should be enforced in six months. He undoubtedly intended to waive presentment of the claim for interest and nothing more. He knew that was a declaration of intention to mature all the notes if there was default in a semi-annual payment of interest, but he could not anticipate that such a harsh measure would be put into execution upon the first opportunity offered. He had the right to indulge in the charitable presumption that no man in this age of civilization and far-flung regard for human rights would, without the slightest notice of intention, seek the fulfillment of a contract that it was expected might continue for ten years. It must be kept in view that the mere failure to pay the interest within 30 days would not of itself immediately mature the whole debt, but acceleration of maturity depended entirely upon the option and desire of the owner and holder of the notes. The debtor knew that there was default in payment of interest, but had no notice that the creditor would exercise his power of acceleration of the whole debt.

"The clause as to the maturity of the whole debt was not positive and self-executing, but depended for its vitality upon the will and desire of the owner and holder of the notes, and equity would demand notice of such will and desire before demand should be made for the payment of the entire debt. The failure to give notice of an intended act could not be known except to the payee of the notes, and it was harsh and inequitable for him to exercise the right of acceleration without due notice to the maker of the notes. A court of equity may relieve against a provision for acceleration where the default of the debtor is the result of accident or mistake, 'when it is procured by the fraud or other inequitable conduct of the creditor himself.' Pomeroy, Eq. Jur. Sec. 439; Bennett v. Stevenson, 53 N.Y. 508; Hawkinson v. Banaghan, 203 Mass. 591, 89 N.E. 1054."

It is the opinion of the court that the prayer for reformation of the mortgage as set out in the complaint should be granted, and that the prayer for acceleration and foreclosure of the mortgage should be denied; that all moneys tendered by the mortgagor into the registry of the court should be immediately paid by the clerk of the court to the mortgagee; and, because the mistake in the description of the mortgage was made by the plaintiff and no request was made by the plaintiff to the defendant to voluntarily correct this mistake and the defendant has not refused to voluntarily correct the mistake, it is the further opinion of the court that the costs of this suit should be borne by the plaintiff.

An appropriate decree will be prepared and entered in accordance with the above findings.