KOZINSKI, Circuit Judge:
 

 On June 18, 1979, Shoreline Concrete Company (Shoreline) filed for bankruptcy under chapter XI of the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 (1898 Act). Approximately 70 percent of the corporation’s assets were liquidated under chapter XI. Shoreline was unable to put forward an acceptable arrangement for reorganization, however, so in December 1981, the proceeding was converted into one for liquidation under chapter VII of the 1898 Act. A trustee was appointed to operate the business, which he managed to do at a slight profit. By 1985, the last of Shoreline’s debts had been paid off by the corporation or purchased by its principal stockholder, and the corporation moved for dismissal of the bankruptcy proceeding.
 

 The bankruptcy court ruled that, as a condition of dismissal, Shoreline would be required to pay the statutory bankruptcy fees appropriate for partial liquidations. Oral Decision of Bankruptcy Judge Steiner, Sept. 18, 1985, at 4, E.R. at 4. Shoreline appealed to the district court, which held that Shoreline could instead pay the lower fees associated with chapter XI arrangements to the extent its assets were liquidated before the conversion to chapter VII. The United States has appealed to this court.
 

 Discussion
 

 Before 1946, the 1898 Act provided that bankruptcy referees would be compensated by various fees collected from debtors’ estates based in part on services provided in individual cases.
 
 See, e.g.,
 
 Chandler Act, ch. 575, 52 Stat. 840, 859 (amending 1898 Act, § 40); S.Rep. No. 959, 79th Cong., 2d
 
 *905
 
 Sess. 2, 5-6 (1946),
 
 reprinted in
 
 1946 U.S. Code Cong.Serv. 1231, 1232, 1235 (S.Rep.). This system proved unsatisfactory and Congress responded by enacting the Referees’ Salary Act of 1946, Pub.L. No. 79-464, 60 Stat. 323, 327 (1946) (Salary Act). That act established a uniform national system of fixed bankruptcy fees, and placed bankruptcy referees on a salaried basis. Salary Act, § 6 (amending 1898 Act, § 40, formerly codified at 11 U.S.C. § 68 (1976)). The Salary Act, like the original fee system under the 1898 Act, was intended to make the bankruptcy system self-supporting. H.R.Rep. No. 1037, 79th Cong., 1st Sess. 2, 5-6 (1945) (H.R.Rep.); S.Rep. at 2, 5-6. It therefore provides that all debtors taking advantage of the protections of the bankruptcy system must pay certain fees set by statute and by the rules of the Judicial Conference of the United States.
 

 Section 40(c)(2) of the 1898 Act, as amended by the Salary Act, provides that the Judicial Conference shall set fees to be charged: (1) “against each estate wholly or partially liquidated in a bankruptcy proceeding,” and (2) “against each case in an arrangement confirmed under chapter XI.” The Judicial Conference set higher fees for liquidations than for confirmed chapter XI arrangements.
 
 See
 
 Report of March 16-17, 1970, Judicial Conf. at 24-25,
 
 reprinted in 2A Collier on Bankruptcy
 
 1140.05[2.1] (J. Moore 14th ed. 1986). Shoreline was unable to obtain confirmation of an arrangement in chapter XI, and thus was forced into liquidation. Under the plain language of the statute, therefore, Shoreline owes the higher fees associated with partial liquidations. 1898 Act, § 40(c)(2)(a).
 

 The district court held, however, that Shoreline ought not be assessed the higher fees for partial liquidations with respect to those assets actually liquidated in chapter XI. The court based this conclusion on its findings that: (1) Shoreline underwent a de facto reorganization; (2) better legal advice would have enabled the corporation to escape the higher fees by converting back to chapter XI before dismissal; and (3) Shoreline could have avoided any liability for fees by postponing its bankruptcy filing a few months until the Bankruptcy Act of 1978 took effect. The court therefore exercised what it believed were its equitable powers and imposed the lower fee.
 

 The district court’s reliance on equity to lower the fee is misplaced. It is true that bankruptcy courts sit as courts of equity.
 
 Knox v. Lines,
 
 463 F.2d 561, 563 (9th Cir.1972). However, a fundamental principle of equity jurisprudence is that “equity follows the law.”
 
 Hedges v. Dixon County,
 
 150 U.S. 182, 192, 14 S.Ct. 71, 74, 37 L.Ed. 1044 (1893). Courts of equity are bound to follow express statutory commands to the same extent as are courts of law.
 
 Hedges,
 
 150 U.S. at 192, 14 S.Ct. at 74;
 
 Rees v. City of Watertown,
 
 86 U.S. (19 Wall.) 107, 122, 22 L.Ed. 72 (1873);
 
 see also Badaracco v. Commissioner,
 
 464 U.S. 386, 398, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984) (“[cjourts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement”);
 
 Heppner v. Alyeska Pipeline Serv. Co.,
 
 665 F.2d 868, 872 (9th Cir.1981) (in absence of drafting error, courts are powerless to avoid effects of plain language of statute). Bankruptcy courts are no more entitled to ignore the law than are other courts of equity.
 
 Kelleran v. Andrijevic,
 
 825 F.2d 692 (2d Cir.1987);
 
 In re Bell,
 
 700 F.2d 1053, 1057 (6th Cir.1983);
 
 In re Fidelity Mortg. Investors,
 
 690 F.2d 35, 40 (2d Cir.1982), ce
 
 rt. denied sub nom. Lifetime Communities, Inc. v. Admin. Office of the U.S. Cts.,
 
 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). As the court held in
 
 Fidelity Mortgage,
 
 the statutory language providing that fees “shall be charged in accordance with the schedule fixed by” the Judicial Conference “permits of no judicially created exception.” 690 F.2d at 39-40 (quoting 1898 Act, § 40(c)(2)).
 
 [1]
 

 
 *906
 
 Shoreline argues that, since most of its assets were liquidated under chapter XI, the chapter XI fees should at least be applied to those assets. This argument misses the point. Shoreline was never entitled to pay the chapter XI fees because it never obtained confirmation of an arrangement under chapter XI. Indeed, Shoreline was forced out of chapter XI by its creditors when they tired of its continued inability to propose an acceptable arrangement for reorganization. The plain language of the applicable statute and rule precisely cover this situation.
 

 Shoreline also contends that the rules promulgated by the Judicial Conference do not comport with the applicable statute, because they make no allowance for the unusual circumstances of Shoreline’s case. This contention is without merit. These rules have been repeatedly upheld as valid exercises of properly delegated authority.
 
 See, e.g., Fidelity Mortgage,
 
 690 F.2d at 37-39;
 
 Mesa Farm Co. v. United States,
 
 475 F.2d 1004, 1006-08 (9th Cir.1973);
 
 American Guaranty Corp. v. Burton,
 
 380 F.2d 789, 792 (1st Cir.1967). The fact that the rules do not permit the tailoring of fees to particular circumstances does not lessen their validity; to the contrary, this approach is in keeping with the clearly expressed will of Congress. The Salary Act was enacted for the purpose of “simplifying] the charges for referees’ expenses and compensation so that they will be easy of computation and uniform throughout the country.” H.R.Rep. at 5-6; S.Rep. at 5. The Judicial Conference rules, adopting a bright-line test, are entirely in keeping with this purpose.
 

 Conclusion
 

 The judgment of the district court is
 
 REVERSED,
 
 and the case is
 
 REMANDED
 
 to the bankruptcy court for entry of judgment for the United States in the amount of the fee imposed by section 40(c)(2)(a) of the 1898 Act and the Judicial Conference rule promulgated thereunder.
 
 [2]
 

 [1]
 

 . The district court purported to distinguish
 
 Fidelity Mortgage
 
 because it involved chapter XI fees rather than chapter VII, and because the debtor in that case "was fully aware of the purpose and contents of the fee schedule.” District Court Order 5, E.R. at 9 n. 1. The first is a distinction without a difference. As for the debtor’s knowledge of the fee schedule, there is no indication that the Second Circuit in
 
 Fidelity Mortgage
 
 found this fact necessary to its decision. In any event, the validity of the fee does not depend on the debtor’s actual knowledge of the contents of the fee schedules.
 

 [2]
 

 . Neither party disputes the bankruptcy court’s determination that $38,245.02 is the correct fee to be imposed under section 40(c)(2)(a). We therefore express no opinion as to whether this amount reflects a proper application of the Judicial Conference schedules and rules.