MARK JAY KAUFMAN, P.A., Plaintiff,

v.

HOWELL, MILTON & LILES, P.A., Defendant.

Bankruptcy No. 90–9033.
Adm. No. 86–00195.

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

May 10, 1991.

Lisa C. Cohen, Keystone Heights, Fla., for plaintiff.

Thomas M. Ervin, Jr., Tallahassee, Fla., for defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on the cross-motions of the plaintiff, Mark Jay Kaufman, P.A. and the defendants, Howell, Milton & Liles, P.A. for summary judgment in this adversary proceeding. Having considered the evidence presented by way of affidavits and deposition transcripts, and having considered the memoranda of law filed by the parties and argument of counsel we find that there are no genuine disputes of material facts and that plaintiff in this action is entitled to judgment as a matter of law.

This case arises in connection with the Chapter 11 case of Mark Jay Kaufman, P.A. (Kaufman) who was a practicing attorney in Gainesville, Florida. Kaufman filed his voluntary petition for relief under Chapter 11, Title 11, United States Code, on November 5, 1986. The filing of the Chapter 11 was precipitated in large part by illness suffered by Mr. Kaufman which resulted in his inability to carry on his practice of law. At the time he filed Chapter 11, Kaufman's law firm was handling approximately 480 cases, practically all of which were personal injury or wrongful death cases. In order to manage this large case load while Kaufman was incapacitated, the court appointed an attorney, Rodney D. McGalliard, Esq. as a consultant to review all of the cases in which Kaufman was involved at that time. Part of McGalliard's duties included an evaluation of the pending cases and making decisions with regard to immediate settlement of such cases or their referral to other law firms for completion. In connection with those duties, Mr. McGalliard contacted defendant, a law firm located in Jacksonville, Florida with regard to transferring some 28 cases to that firm.

In connection with the transfer of the cases from Kaufman to the defendant firm, McGalliard prepared an agreement which provided that the two firms would split all fees generated in the referred cases on a 50–50 basis without the need for court approval of each and every settlement. The agreement was structured this way for several reasons. First of all, due to the large number of cases being referred to the defendant's firm and to other firms, significant problems and delays would occur should the attorneys have been required to seek court approval of the fee allocations in each and every case. Secondly, virtually all of the cases which were transferred to the defendant firm were in some stage of litigation and it was felt that the 50–50 split would give the appropriate consideration to the Kaufman firm for the work done in those cases.

The defendant firm and Kaufman executed the agreement. Thereafter Kaufman's attorneys prepared and circulated to all creditors of his Chapter 11 estate an application/notice of intent to transfer assets of the estate to Howell, Liles, Braddock and Milton. No objections were filed to the notice and on April 13, 1987, this court entered an order approving the agreement and authorizing the transfer of cases to the defendant law firm. A list of the specific cases transferred was attached to and made a part of the agreement.

Among the cases which were transferred by Kaufman to the defendant firm was that of Lori Bishop. However, Lori Bishop's name was inadvertently not included on the list of cases which was appended to the agreement. Following the execution of the agreement and transfer of the case files to the defendant firm, all cases on the list with the exception of that of Lori Bishop were settled and the fees distributed in accordance with the agreement, that is, 50% to each law firm. With respect to the Lori Bishop case, Robert Wilhelm, the partner of the defendant firm handling the cases referred from Kaufman successfully prosecuted and obtained a jury verdict in the amount of $4,000,000 against the State of Florida. However, due the sovereign immunity cap in the State of Florida, a judgment in the amount of $100,000 was obtained with a 25% attorney's fees cap. This $25,000 fee was split 50–50 with Kaufman in accordance with the agreement and consistent with all of the previous cases which had been settled. Thereafter, Mr. Wilhelm lobbied the Florida Legislature for a special claims bill on behalf of Lori Bishop and therein obtained $1,050,000 including a $262,500 attorney fee. The defendant law firm refused to pay to Kaufman the 50% gross fees called for in the agreement with respect to this recovery and this action followed.

In his complaint, plaintiff seeks a reformation of the contract so as to include Lori Bishop's name on the list of cases transferred and to specifically enforce the agreement or recover damages for its breach. Plaintiff further seeks to have defendant enjoined from making any distribution of the fees in dispute pending resolution of this action.

While in its answer to the complaint defendant denies that the Lori Bishop case was ever intended to be a part of the agreement transferring the cases, the deposition of Mr. Wilhelm makes it clear that on behalf of the defendant firm he understood at the time of the transfer of cases that Lori Bishop was to be one of the cases subject to agreement. Therefore there is no genuine issue as to that fact raised in this proceeding. The sole issue raised by the defendants is that the agreement itself is illegal and is therefore unenforceable. Therefore, they argue that the contract is not subject to reformation and it cannot be enforced by this court.

The central issue to this case is whether the contract between Kaufman and the defendant law firm is illegal and void as against public policy. In general, a court of equity may reform a contract to reflect the true agreement between the parties to the documents. *Hardaway Timber Co. v. Hansford*, 245 So.2d 911, 913 (Fla. 1st DCA 1971). However, when the proposed reformation would result in an invalid or illegal contract, the court will not reform the instrument since equity cannot accomplish an illegal act. *Hedges v. Dixon County*, 150 U.S. 182, 192, 14 S.Ct. 71, 74, 37 L.Ed 1044 (1983). The issue of whether a contract is valid must be determined by the law of the place where the contract is made, therefore the law of Florida applies in this case. *Sturiano v. Brooks*, 523 So.2d 1126 (Fla. 1988). Under Florida law, the right to contract is subject to the general rule that the agreement must be legal. *Thomas v. Ratiner*, 462 So.2d 1157, 1159 (Fla. 3rd DCA 1984), rev. den. 472 So.2d 1182 (Fla.1985). If a contract or bargain is criminal, tortious or otherwise opposed to public policy in its formation or in its performance, the contract or bargain is illegal and unenforceable. *Citizens Bank and Trust Co. v. Mabry*, 102 Fla. 1084, 136 So. 714 (Fla.1931).

In the instant case, defendants assert that the agreement which Kaufman seeks to reform and enforce violates the Florida Bar Code of Professional Responsibility. Defendants cites specifically to the Code of Responsibility Rule 4–1.5 which at the time the agreement was executed provided in pertinent part:

(E) A division of fees between lawyers who are not of the same firm may be made only if:

1) The division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

2) The client is advised of and does not object to the participation of all the lawyers involved;

3) The total fee is reasonable.

Florida Bar Code Prof.Resp., D.R. 4–1.5(E) promulgated in rules regulating the Florida Bar, 494 So.2d 977, 1030 (Fla.1986).

Plaintiff asserts that in this case the agreement does not satisfy the requirements of the Bar rule because it does not divide the fees in proportion to the work performed on the case, there being no dispute that Kaufman performed no more than 10% of work on the Lori Bishop case. Additionally, in connection with these motions for summary judgment, defendants have submitted an affidavit signed by Lori Bishop in which she objects to any distribution of attorney's fees to Kaufman that are not in proportion to the work he actually performed and further stating that she never knowingly consented to or agreed that Mark Kaufman should receive any attorney's fees greater than those in proportion to the work he or his associates actually performed. However, there is no evidence suggesting that at the time the cases were transferred from Kaufman to the defendant firm, Lori Bishop or any of the other clients whose cases were transferred were not advised of the terms of the transfer. Furthermore, the record shows that when the first distribution of attorney's fees was made following the $100,000 judgment against the State of Florida, Lori Bishop approved and signed the trust account disbursal statement reflecting payment of the proceeds of that judgment and which reflected the 50–50 fee split between Kaufman and the defendant firm.

In further support of their position, defendants have submitted the affidavit of Joseph W. Little, a professor of law at the University of Florida College of Law and a former member of the professional ethics committee of the Florida Bar from 1979 to 1988. Mr. Little has reviewed the contract and gives his opinion that "any contract that called for a 50–50 division of a fee irrespective of the proportion of the services performed by each lawyer and irrespective of whether each lawyer was capable of providing services would be contrary to the public policy of Florida, void an application, and unenforceable." (Affidavit of Joseph W. Little at p. 3).

In arguing in support of this action, plaintiff first asserts that this court should not be ruling on alleged violations of the disciplinary rules of the Florida Bar. Plaintiff points to the preamble to those rules which provides under the heading "scope" the following discussion.

> Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules could be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not apply an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra disciplinary consequences of violating such duty.

Plaintiff thus argues that the use by defendants of the provisions of the disciplinary rules has a substantive defense to an action on a contract is the type of thing that is expressly precluded under the preamble to those rules.

Next, plaintiff argues that the instant situation is not controlled by Rule 4–1.5(E). Rather, this case involves administration and disposition of assets which were part of a bankruptcy estate. At the time Kaufman filed his petition for Chapter 11, Kaufman had an interest in all of his cases by virtue of the contracts with the clients which entitled him to recovery of attorney's fees in those cases. Thus, that right to future payments in each of those cases represented property of the bankruptcy es-

tate under 11 U.S.C. § 541(a)(1). The transfer of the cases to the defendant firm constituted a disposition of assets for the benefit of Kaufman's estate with a consideration to be received 50% of the fees generated in those cases. Rather than merely being a referral of cases from one lawyer to another, this transaction involve the transfer of cases from a debtor-in-possession reorganizing under the provisions of Chapter 11 of the Bankruptcy Code to another law firm. Thus, as plaintiff argues, these circumstances make the transfer of the cases much more than a mere "division of fees between lawyers" thus taking the transaction beyond the confines of Rule 4–1.5(E).

Had the agreement which is the subject of this action been entered into outside of the context of a Chapter 11 reorganization proceeding it may very well to be considered to be violative of the Code of Professional Responsibility. The evils to be guarded against in this type of arrangement involve the "brokering" of personal injury cases by attorneys who aggressively solicit the representation of injured persons for a contingency fee but who entertain absolutely no intent to handle the cases themselves. Instead, once they have been engaged by the client, they then refer the case to a competent trial attorney in exchange for a referral fee. Thus, those attorneys can make substantial sums of money without burdening themselves of the responsibility of the cases or of having to actively practice law. In the instant case, this evil is not present. Kaufman, prior to his becoming incapacitated and filing for Chapter 11, performed work in all of the cases referred to the defendant law firm. In some cases, the work performed by Kaufman was significant and in all likelihood constituted more than 50% of the work performed on those files. However, in all cases up to and including the trial court case involving Lori Bishop, fees were split 50–50 regardless of whether Kaufman did the majority of work or the defendant law firm did the majority of work. It was only when the amount of the fee involved became $262,500 and the defendant law firm broke up that defendants decided the

contract was illegal and that they should keep the lion's share of the final fee.

While the public policy of the State of Florida as expressed in the Code of Professional Responsibility with respect to lawyers must be considered in this action, there is another policy which must also be given consideration. The plaintiff was at the time of the transfers of these cases a debtor-in-possession under Chapter 11 of the Bankruptcy Code. As such, he stood as a fiduciary for the benefit of the creditors of his estate. He had the obligation under the provisions of the Bankruptcy Code to maximize the value of his estate for the benefit of his creditors. This court, vested with the jurisdiction granted it under the provisions of 28 U.S.C. § 1334(a), approved the instant agreement as one being in the best interest of the creditors of Kaufman's estate. The goal of the maximum distribution of a debtor's estate to his or her creditors is one of the basic policy considerations behind the bankruptcy code. It was in furtherance of this policy that the agreement was brought to this court and approved.

What this case ultimately boils down to is a balancing of both public policy and the equities of the situation. Unless an agreement is clearly a violation of public policy or is clearly illegal, it should be enforced. Here, the preamble to the disciplinary rules reflects on its face that these rules should not be used as a basis for civil liability. Here they are being used in an effort to avoid the burdens of a contract entered into freely and, we assume, intelligently by the parties. They are being utilized in an effort to deny to a reorganizing Chapter 11 debtor the benefits of a bargain which was intended to inure to the benefit of the creditors of his estate. Finally, it is clear that the defendants have reaped all of the benefits they bargained for when they entered into the agreement, but now when the amount became very significant, they want to keep it all. Equity should not countenance such conduct.

Accordingly, we find that the agreement between Mark J. Kaufman, P.A. as debtor-in-possession and the defendants, Howell,

Liles & Milton is a valid and binding agreement, that it should be reformed in accordance with the original intent of the parties to include the Lori Bishop case, and that plaintiff is entitled to have the contract specifically performed by the payment of the 50% gross attorney's fees received through the claims bill on behalf of Lori Bishop together with pre-judgment interest from the date of receipt of those funds.

There being no genuine issues of material fact and this court having found that plaintiff is entitled to judgment as matter of law, the plaintiff's Motion for Summary Judgment be and same is hereby granted and defendants' Cross–Motion for Summary Judgment be and same is hereby denied. A separate final judgment will be entered in accordance herewith.

DONE AND ORDERED.