**UNITED STATES of America, Plaintiff,**

v.

**ALGON CHEMICAL INC., a corporation; and Edward Latinsky, an individual, Defendants.**

**Civ. A. No. 87–1820.**

United States District Court,
D. New Jersey.

April 12, 1988.

Samuel A. Alito, Jr., U.S. Atty. by Kevin J. McKenna, Asst. U.S. Atty., Newark, N.J., and Thomas Scarlett, Chief Counsel by Richard E. Geyer, Associate Chief Counsel for Veterinary Medicine, U.S. Food and Drug Admin., Rockville, Md., for plaintiff.

Crummy, Del Deo, Dolan, Griffinger & Vecchione by Robert A. Recio, Newark, N.J., and Hyman, Phelps & McNamara, P.C. by James R. Phelps, Robert A. Dormer, A. Wes Siegner, Jr., Washington, D.C., for defendants.

## OPINION

BISSELL, District Judge.

These cross-motions arise out of a Complaint filed on May 12, 1987 by the United States of America ("United States") against Algon Chemical, Inc. ("Algon") and Edward B. Latinski, President of Algon. In this cause, the United States sought preliminary and permanent injunctive relief against the distribution in interstate commerce of 13 lots of bulk drugs [1] in contravention of § 331(a), (c) [2] of the Federal Food, Drug and Cosmetic Act (the "Act"), 21 U.S.C. § 301 *et seq.*, and temporary, preliminary and permanent injunctive relief against the receipt and distribution of similar drugs in future contravention of the Act. The Court ordered the defendants to show cause as to why an order should not be entered issuing a preliminary and permanent injunction restraining them from violation of the Act. After oral argument on May 28, 1987, the Court, finding no material issue of fact, dismissed plaintiff's application for preliminary injunction and *sua sponte* ordered the parties to file cross-motions for summary judgment.

Plaintiff's Complaint alleges that the drugs are not labeled with adequate di-

1. The drugs are bulk drugs intended for further processing for use on animals. They include five lots of dimetridazole; two lots each of levamisole and nitrofurazone; and one lot each of penicillin, sulfamethoxazole, lidocaine and oxytetracycline.

2. Title 21 U.S.C. § 331:

The following acts and the causing thereof are hereby prohibited: (a) [t]he introduction or delivery for introduction into interstate commerce of any ... drug ... that is adulterated or misbranded. ... (c) [t]he receipt in interstate commerce of any ... drug ... that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise.

rections for use and are, therefore, misbranded within the meaning of 21 U.S.C. § 352(f)(1). Additionally, plaintiff alleges that one of the lots of drugs, penicillin, is an unapproved new animal drug within the meaning of 21 U.S.C. § 321(w)(3),[3] and therefore is adulterated under 21 U.S.C. § 360b(a)(1)(A)[4] and § 351(a)(5).[5] The United States brings this proceeding under 21 U.S.C. § 332(a) which vests the United States District Courts with jurisdiction to enjoin and restrain violations of the Act.

The defendant, Algon, argues that the 13 lots of drugs are exempt from the labeling requirements of § 352(f)(1) of the Act by virtue of an exempting regulation, 21 C.F.R. § 201.122. Additionally, defendant argues that the same exempting regulation serves to make § 321(w)(3) inapplicable to the seized penicillin.

Presently before the Court are cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. On a motion for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties, in moving for summary judgment, have agreed that there exist no genuine issues of material fact.[6] The Court will proceed therefore, upon consideration of the pleadings and affidavits submitted, to determine which party is entitled to judgment as a matter of law.

## THE FACTS

Algon has been engaged in receiving and selling in interstate commerce bulk pharmaceutical and chemical supplies for approximately eight years. Drugs that are in bulk form require further processing before actual use. The 13 lots of bulk drugs in question were purchased by Algon after importation into the United States by ICC Industries, and were stored by the NBC Warehouse and Storage Co. in Garfield, New Jersey. These bulk drugs were intended solely for the use of veterinarians in the practice of veterinary medicine. To prevent Algon from shipping the drugs, the Food and Drug Administration ("FDA") requested that the State of New Jersey embargo the drugs under state law until the FDA could obtain relief in federal court.[7] The drugs were placed under embargo beginning September 3, 1986.

Prior to imposition of the embargo, Algon shipped portions of the 13 lots to, among others, Schuyler Laboratories, Rushville, Illinois and Brinton Veterinary Clinic, Willmar, Minnesota.[8] Schuyler, Algon's principal customer, resells the drugs

3. Plaintiff's Complaint states "penicillin, is adulterated within the meaning of 21 U.S.C. § 351(a)(5) in that it is a new animal drug within the meaning of 21 U.S.C. § 321(w)(*1*)." The correct section, 21 U.S.C. § 321(w)(*3*), is cited in Plaintiff's Brief at p. 10.

4. "A new animal drug shall, with respect to any particular use or intended use ... be deemed unsafe for the purposes of [351(a)(5) ] ... unless—(A) there is in effect an approval of an application filed ... with respect to such use or intended use of such drug." 21 U.S.C. § 360b(a)(1)(A).

5. "A drug ... shall be deemed to be adulterated —if it is a new animal drug which is unsafe within the meaning of section [360b]." 21 U.S.C. § 351(a)(5).

6. Each party has submitted conflicting statements from practicing veterinarians attesting to (1) the necessity of having access to bulk drugs for successful practice, and (2) the public health risk posed by the use of these drugs. However, these statements do not raise material issues in that they do not address the questions of whether there have been violations of the Food, Drug and Cosmetic Act or whether any alleged violation would continue absent an injunction. *See United States v. Sumitomo Shoji, New York, Inc.*, 534 F.2d 320, 324, 63 CCPA 79 (1976) (where an issue of fact is not relevant to the controlling legal question, it is not material so as to preclude summary judgment).

7. The FDA sought state embargo because the Act does not provide for administrative detention. Plaintiff's Brief, p. 5 n. 3. Approximately $300,000 worth of bulk chemicals have been embargoed by the State of New Jersey.

8. Before the embargo Algon also sold a lot of dimetridazole to Borge Laboratories which in turn sold portions of the lot to two veterinary clinics.

to veterinarians.[9] None of the parties involved—Algon, Schuyler, Borge and their veterinarian consignees—holds FDA approvals for use of the drugs.

Two of the embargoed articles were in containers bearing cautionary labels stating "[t]o be used only for manufacturing, processing or repacking." The remaining articles bore labeling indicating only the name of the drug and its origin. None of these drug items were accompanied by labeling that indicated directions for use.

## THE LAW

### A. Labeling Under § 352(f)(1).

In its Complaint, plaintiff alleges that defendant introduced or delivered for introduction into interstate commerce drugs which were misbranded within the meaning of 21 U.S.C. § 352(f)(1). Section 352 provides that:

[a] drug ... shall be deemed to be misbranded

  .        .        .        .        .

(f) [u]nless its labeling bears (1) adequate directions for use; ... *Provided,* that where any requirement of clause (1) of this paragraph, as applied to any drug ... is not necessary for the protection of the public health, the Secretary *shall* promulgate regulations exempting such drug ... from such requirement.

(Emphasis supplied). The Secretary promulgated an exemption for bulk drugs in response to the mandatory proviso of § 352(f)(1):

A drug in a bulk package, except tablets, capsules, or other dosage unit forms, intended for processing, repacking, or use in the manufacture of another drug shall be exempt from section 502(f)(1) [21 U.S. C. § 352(f)(1) ] of the act if its label bears the statement "Caution: For manufacturing, processing, or repacking"; ... But the exemption shall not apply to a substance intended for a use in manufacture, processing, or repacking which

causes the finished article to be a new drug, unless:

(a) [a]n approved new drug application or new animal drug application covers the production and delivery of the drug substance to the application holder ...

21 C.F.R. § 201.122.

The limitation in 21 C.F.R. § 201.122 indicates that labeling requirements of 21 U.S. C. § 352(f)(1) are not suspended if a bulk drug is to be used in a finished article that is a new (animal) drug unless an approved new animal drug application covers the production and delivery of the drug substance to the application holder.

Defendant contends that its bulk drug materials, when shipped, are labeled "for manufacturing, processing or repacking" in conformity with the language prescribed in 21 C.F.R. § 201.122 and are therefore exempt from the labeling requirement in 21 U.S.C. § 352(f)(1). Plaintiff argues that Algon's bulk drugs are not exempt from such labeling requirements because they are used by veterinarians to compound finished articles which are unapproved new animal drugs. The issue to be decided, therefore, is whether the exception to the exemption in 21 C.F.R. § 201.122 applies to the defendant in this case.

### 1. The Burden of Proof.

Plaintiff contends that defendant has the burden of proving that its bulk drugs are exempt from the labeling requirements of 21 U.S.C. § 352(f)(1) and that defendant cannot meet this burden. In *United States v. An Article of Device ... Toftness Radiation Detector,* 731 F.2d 1253 (7th Cir. 1984), the court dealt with a similar situation in which defendant was relying on exemptions found in a series of regulations to remove it from the labeling requirements of 21 U.S.C. § 352(f)(1). After examining the language of the statute and appropriate regulations, the court concluded that the "party claiming entitlement to a statutory exemption bears the burden of proving the entitlement * * * unless plac-

---

**9.** The government seized several lots of drugs owned by Schuyler under 21 U.S.C. § 334. The case was litigated in favor of Schuyler. *See* *United States v. 9/1 KG Containers ... an Article of Drug For Veterinary Use,* 674 F.Supp. 1344 (C.D.Ill.1987).

ing the burden of proof [on the defendant] would be contrary to the [letter and intent] of the Act." *Id.* at 1260, 1261. The precise question for this Court is whether the exception to the exemption in 21 C.F.R. § 201.122 is consistent with the letter and intent of the Act under which it was enacted, thus requiring the defendant to prove that its bulk drugs are entitled to be exempt from the labeling requirements of § 352(f)(1).

### 2. The Legislative Scheme

The Food, Drug and Cosmetic Act was enacted in 1938, after years of deliberation. The legislative history of the Act demonstrates that Congress had no intention through passage of this Act to interfere with the practice of the healing arts [10] and that all the healing arts "licensed by law in the various States" should be accorded this independence.[11] The Drug Amendments of 1962, Pub.L. No. 87–781, 76 Stat. 780 (1962), expanded the FDA's authority in carrying out the intent of the Act, however, certain notable exclusions from this expanded authority indicated Congress' intent that the FDA should not exercise the same type of control over the healing arts. Title 21 U.S.C. § 374(a)(1)(B) empowers the FDA to "inspect ... such factory, warehouse, establishment, or vehicle ... in which prescription drugs ... are manufactured ... (including records, files, papers, processes, controls, and facilities) bearing on whether prescription drugs ... are adulterated or misbranded within the meaning of this Act." Title 21 U.S.C. § 374(a)(2) states, however, that "[t]he provisions ... of this subsection shall not apply to— ... (B) practitioners licensed by law to prescribe or administer drugs ... and who manufacture, prepare, propagate, compound, or process drugs ... solely for use in the course of their professional practice." Similarly, 21 U.S.C. § 360(b) requires that "every person ... engaged in the manufacture, prepa-

ration, propagation, compounding or processing of a drug or drugs ... register with the Secretary his name, [and] places of business." Once again, "practitioners licensed by law to prescribe or administer drugs ... and who manufacture, prepare, propagate, compound, or process drugs ... solely for use in the course of their professional practice" are exempt from the registration requirement. 21 U.S.C. § 360(g)(2). These exclusions apply to veterinarians as well as other practitioners of the healing arts.

In 1968 Congress amended the Food, Drug and Cosmetic Act with Animal Drug Amendments, Pub.L. No. 90–399, 82 Stat. 343 (codified as 21 U.S.C. § 360b (1982)), intended to "merely consolidate provisions under existing law." [12] The amendments did not add much "new" law, but simply drew together in § 360b the requirements for drugs and certifiable antibiotics which had previously been scattered throughout the existing Act. The only new section was that dealing with drugs in feed, or the medicated feed section. Congress had the opportunity to alter substantially the provision of the Act pertaining to the regulation of animal drugs; however, it chose merely to consolidate the existing provisions into a more efficient format. There is nothing in the legislative history of the Animal Drug Amendments of 1968 indicating that they were intended to have any impact upon the practice of veterinary medicine.

In the instant case, the regulation in question exempts bulk drugs from the labeling requirements of 21 U.S.C. § 352(f)(1) unless the bulk drug will be used to produce a finished article which is a new drug. The "new drug" limitation can be avoided only if a new animal drug application covers the production and delivery of the drug to "the application holder." Since these bulk drugs are being produced for and delivered to veterinarians, the regulation,

---

**10.** S.Rep. No. 361, 74th Cong., 1st Sess., 3 (1935). *See Chaney v. Heckler,* 718 F.2d 1174, 1179 n. 13 (D.C.Cir.1983), *rev'd on other grounds,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985).

**11.** S.Rep. No. 361, 74th Cong., 1st Sess., 5 (1935).

**12.** S.Rep. No. 1308, 90th Cong., 2d Sess. 1, *reprinted in* 1968 U.S.Code Cong. & Admin.News 2607, 2608.

in effect, requires that veterinarians must be holders of new animal drug approvals. In order to apply for and become holders of new animal drug approvals, veterinarians would have to comply with registration and inspection provisions of the Act from which they have been expressly exempted. This is an unreasonable expectation given Congress' consistent approach of staying out of the regulation of the healing arts.

"The validity of regulations promulgated under an authorizing statute will be sustained so long as they are 'reasonably related to the purposes of the enabling legislation'." *United States v. Richards*, 583 F.2d 491, 495 (10th Cir.1978) (quoting *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 280–81, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969)).

*United States v. 9/1 KG Containers ... Article of Drug for Veterinary Use*, 674 F.Supp. 1344 (C.D.Ill.1987),[13] presenting a fact pattern very similar to the case at bar, deals directly with the validity of 21 C.F.R. § 201.122. The court stated that it "makes no sense for Congress to grant [an exemption from registration for those who prescribe or administer drugs and who compound, or process drugs solely for use in the course of their professional practice] if it then takes away the very drugs that would be compounded." *Id.* at 1349. The court found the regulation to be clearly "inconsistent and out of harmony with the statute's intent as manifested by Congress." *Id.* at 1349. Furthermore, the Court found that requiring the defendant to carry the burden of showing a regulatory exemption applies to its situation was unreasonable. In order to benefit from the labeling exemption defendant would have to demonstrate that "(1) the finished product in which the bulk drug is used is not a new drug; or (2) that if it is a new drug, a new animal drug application has been secured." *Id.* at 1349. First, the court noted

that neither the plaintiff nor the defendant would be able to show that the finished product was not a new drug because, up until the time of compounding by the individual veterinarian, there was no finished product. Second, defendant could not possibly apply for a new drug approval because he has no idea what drug will be produced when veterinarians compound a finished product from bulk drugs. Finally, to require veterinarians to apply for new drug approvals is simply unrealistic and inconsistent with Congress' intent to stay out of the regulation of veterinary medicine. After noting that a regulation must be read as consistent with the statute,[14] the court concluded that the "regulation [was] consistent with the statute to the point of exempting bulk drugs from the general labeling requirements. However, ... the limitation of the exemption (*i.e.*, that 'new drugs' are not exempt) [was] unreasonable and arbitrary and therefore, a nullity." *Id.* at 1350.[15]

The present case is nearly identical to *United States v. 9/1 KG Containers* in that the United States alleges that defendant's drugs are misbranded under the provisions of 21 U.S.C. § 352(f)(1) and defendant relies on the exempting provisions of 21 C.F.R. § 201.122 to remove its bulk drugs from the labeling requirements of § 352(f)(1). Here, as in that case, to require defendant to show that the finished product in which its bulk drugs are to be used is *not* a new drug; or to show that if the finished product is a new drug, a new animal drug application has been secured by the veterinarian receiving the bulk drug, is unreasonable. The Court finds that 21 C.F.R. § 201.122 places upon the defendant the impossible burden of demonstrating that the exemption applies to its bulk drugs. The Court also finds that the exceptions to the basic exemption are not

---

13. An opinion was rendered in favor of defendant on December 8, 1987. The court subsequently granted the government's motion for a stay of judgment pending appeal to the United States Court of Appeals for the Seventh Circuit.

14. *See Bencivenga v. Western Pa. Teamsters*, 763 F.2d 574 (3d Cir.1985).

15. *See Fowler v. Gage*, 301 F.2d 775, 778–79 (10th Cir.1962). A portion of a regulation may be severed so long as the remainder of the regulation is valid.

consistent with the statute under which this regulation was promulgated. Therefore, in order to give a reasonable meaning to the exempting regulation, consistent with the Act, the Court finds that only that portion which exempts bulk drugs from the labeling requirements of 21 U.S.C. § 352(f)(1) applies to bulk drugs supplied for use in the practice of veterinary medicine.

### B. Applicability of § 321(w)(3) to the Bulk Drug Penicillin.

 Plaintiff alleges that one of the drug lots, penicillin, is an unapproved new animal drug within the meaning of 21 U.S.C. § 321(w)(3), and therefore is adulterated under 21 U.S.C. § 360(a)(1) and § 351(a)(5). Defendant contends that all § 321(w)(3) does is to make penicillin subject to the new animal drug requirement when it is manufactured in a form suitable for commercial purposes. The issue to be decided then is whether *bulk* penicillin is in a form intended for use in animals so as to be a new animal drug subject to the provisions of § 360(a)(1) and § 351(a)(5).

Section 321(w)(3) provides that "[t]he term 'new animal drug' means any drug *intended for use for animals* other than man ... which drug is composed wholly or partly of any kind of penicillin." (Emphasis supplied). The language of the statute clearly indicates that the term "new animal drug" applies only to drugs which are manufactured in a finished dosage form and not to bulk ingredients used in compounding by veterinarians. Here, the drugs under embargo are not in finished dosage forms (*e.g.*, capsules, tablets) and are not "intended for use" in their present form. Instead, they are intended solely for the use of veterinarians who will compound them into medicines to be used in their practices. "Thus they are not 'new animal drugs' as Congress used that term in the statute."[16] For this reason, the Court finds that the new animal drug provisions of § 321(w)(3) are not applicable to the embargoed lot of penicillin; therefore, it is

not adulterated within the meaning of 21 U.S.C. § 360b(a)(1)(A) and § 351(a)(5).

Although plaintiff's Complaint specifically cites only penicillin as being adulterated under the provisions of 21 U.S.C. § 321(w)(3), the Court finds that none of these bulk drugs are "intended for use" in animals because they are not in final dosage forms, and are therefore not "adulterated."

### CONCLUSION

The Court finds that the bulk drug exemption to 21 U.S.C. § 352(f)(1) provided in 21 C.F.R. § 201.122 applies to the bulk drugs which are the subject of the present action and are supplied to veterinarians solely for compounding into medicines used in their practices, and that the "new animal drug" provision of 21 U.S.C. § 321(w)(3) does not apply to the embargoed lot of penicillin. Accordingly, the Court grants defendant's motion for summary judgment.

---

16. *United States v. 9/1 KG Containers ... Article of Drug for Veterinary Use, supra,* held that it was clear from the "statutory scheme that Congress only intended the new drug provisions to apply to finished dosage forms." 674 F.Supp. at 1351.